S05G0311. HOUGH v. THE STATE.
S05G0640. THE STATE v. HANDSCHUH.
(620 SE2d 380)

MELTON, Justice.

Because both of these appeals regard the constitutionality and construction of Georgia's Implied Consent Statute, OCGA § 40-5-55, they have been consolidated for our review. In Case No. S05G0311, Scott Hough contends that the Court of Appeals erred in its determination that the trial court properly denied his motion to suppress the results of a test of his blood following a traffic accident. See *Hough v. State*, 269 Ga. App. 744 (605 SE2d 43) (2004). In Case No. S05G0640, the State argues that the Court of Appeals erred by reversing the trial

court and finding that Bryan Reid Handschuh's refusal to submit to a blood test following a traffic accident should have been suppressed. See *Handschuh v. State*, 270 Ga. App. 676 (607 SE2d 899) (2004) (disapproving *Hough*, supra).

Specifically, these appeals present two related questions: (1) whether, pursuant to the doctrine of implied consent as set forth under OCGA § 40-5-55 (a)[1] and analyzed in *Cooper v. State*, 277 Ga. 282 (587 SE2d 605) (2003), the State may constitutionally require a suspect who has not yet been arrested to submit to a chemical test of his blood, breath, urine, or other bodily substances where the suspect has been involved in a traffic accident resulting in serious injuries or fatalities and the investigating law enforcement officer has probable cause to believe that the suspect was driving under the influence of alcohol or other drugs; and (2) whether, in circumstances where there has been no traffic accident resulting in serious injuries or fatalities but the law enforcement officer has probable cause to believe that the suspect was driving under the influence of alcohol or other drugs, the suspect must be arrested prior to a reading of implied consent in order for the suspect's refusal to submit to testing to be used against him in a subsequent trial. For the reasons that follow, we answer both of these questions in the affirmative.

---

[1] OCGA § 40-5-55 provides, in its entirety:

(a) The State of Georgia considers that any person who drives or is in actual physical control of any moving vehicle in violation of any provision of Code Section 40-6-391 constitutes a direct and immediate threat to the welfare and safety of the general public. Therefore, any person who operates a motor vehicle upon the highways or elsewhere throughout this state shall be deemed to have given consent, subject to Code Section 40-6-392, to a chemical test or tests of his or her blood, breath, urine, or other bodily substances for the purpose of determining the presence of alcohol or any other drug, if arrested for any offense arising out of acts alleged to have been committed in violation of Code Section 40-6-391 or if such person is involved in any traffic accident resulting in serious injuries or fatalities. The test or tests shall be administered at the request of a law enforcement officer having reasonable grounds to believe that the person has been driving or was in actual physical control of a moving motor vehicle upon the highways or elsewhere throughout this state in violation of Code Section 40-6-391. The test or tests shall be administered as soon as possible to any person who operates a motor vehicle upon the highways or elsewhere throughout this state who is involved in any traffic accident resulting in serious injuries or fatalities. Subject to Code Section 40-6-392, the requesting law enforcement officer shall designate which of the test or tests shall be administered, provided a blood test with drug screen may be administered to any person operating a motor vehicle involved in a traffic accident resulting in serious injuries or fatalities.

(b) Any person who is dead, unconscious, or otherwise in a condition rendering such person incapable of refusal shall be deemed not to have withdrawn the consent provided by subsection (a) of this Code section, and the test or tests may be administered, subject to Code Section 40-6-392.

(c) As used in this Code section, the term "traffic accident resulting in serious injuries or fatalities" means any motor vehicle accident in which a person was killed or in which one or more persons suffered a fractured bone, severe burns, disfigurement, dismemberment, partial or total loss of sight or hearing, or loss of consciousness.

1. (a) In *Cooper*, we considered the constitutionality of that portion of OCGA § 40-5-55 (a) which states

> [A]ny person who operates a motor vehicle upon the highways or elsewhere throughout this state shall be deemed to have given consent, subject to Code Section 40-6-392, to a chemical test or tests of his or her blood, breath, urine, or other bodily substances for the purpose of determining the presence of alcohol or any other drug, . . . if such person is involved in any traffic accident resulting in serious injuries or fatalities.

We held: "[T]o the extent that OCGA § 40-5-55 (a) requires chemical testing of the operator of a motor vehicle involved in a traffic accident resulting in serious injuries or fatalities *regardless of any determination of probable cause*, it authorizes unreasonable searches and seizures in violation of the State and Federal Constitutions." (Emphasis supplied.) Id. at 291 (V).

We further explained that the Implied Consent Statute

> grants a suspect an opportunity, not afforded him by our constitution, to refuse to take a blood-alcohol test. This Court's use of the term "suspect" in regard to the Implied Consent Statute brings into sharp focus the flaw in that portion of the statute compelling chemical testing of the person merely by virtue of involvement in a traffic accident resulting in serious injury or fatality. There is no requirement of individualized suspicion, much less probable cause, that would render the person "suspect" of impaired driving.

(Citations, punctuation and emphasis omitted.) Id. at 290.

*Cooper* makes it clear that OCGA § 40-5-55 (a) is unconstitutional to the extent that it could be interpreted to require an individual to submit to chemical testing *solely* because that individual was involved in a traffic accident resulting in serious injuries or fatalities. On the other hand, where an individual has been involved in a traffic accident resulting in serious injuries or fatalities *and* the investigating law enforcement officer has probable cause to believe that the individual was driving under the influence of alcohol or other drugs, the constitutional infirmities at play in *Cooper* are no longer present, and the ensuing search is both warranted and constitutional. Due to the existence of probable cause, the individual being subjected to a search is, in fact, a "suspect" as contemplated by the statute.

Moreover, we must keep in mind that the search in question must be analyzed by "balancing its intrusion on the individual's Fourth Amendment interests against its promotion of legitimate governmental interests." *Delaware v. Prouse*, 440 U. S. 648, 654 (99 SC 1391, 59 LE2d 660) (1979); *United States v. Martinez-Fuerte*, 428 U. S. 543 (96 SC 3074, 49 LE2d 1116) (1976). The stated purpose of OCGA § 40-5-55 is to protect the citizens of this State from individuals driving under the influence because these drivers constitute "a direct and immediate threat to the welfare and safety of the general public." This extremely important purpose, in turn, must be balanced against the intrusion created by chemical testing on the individual's Fourth Amendment rights where the individual has been involved in a traffic accident involving serious injuries or fatalities and the investigating officer has probable cause to believe that the individual was driving under the influence. In considering this balance, it must further be remembered that the Fourth Amendment was designed to protect individuals only from *unreasonable* searches. *United States v. Sharpe*, 470 U. S. 675, 682 (105 SC 1568, 1573, 84 LE2d 605) (1985); *Schmerber v. California*, 384 U. S. 757, 768 (86 SC 1826, 16 LE2d 908) (1966). In the scenario described here, however, given the presence of probable cause, the requirement that a person submit to a chemical test is inherently reasonable in the balance, and the Fourth Amendment's "probable cause yardstick" measures up to be constitutionally sound. See *Adams v. State*, 269 Ga. 405, 407 (1) (498 SE2d 268) (1998).

Furthermore, nothing in OCGA § 40-5-55 requires a DUI suspect to be arrested in order to trigger his or her implied consent to testing following a traffic accident resulting in serious injuries or fatalities. This makes inherent sense, because in such cases, a DUI suspect may be so incapacitated that a formal arrest would be unwarranted under the circumstances. Furthermore, an individual involved in such an accident, rather than someone who is merely stopped while driving, is on notice that some inquiry will be made regarding the cause of and responsibility for the accident, and this knowledge would give context to the subsequent reading of implied consent rights.

(b) In Case No. S05G0311, Hough argues that he was not properly placed under arrest prior to the reading of his implied consent rights. The record shows, however, that prior to the reading of his implied consent rights, Hough had been involved in a traffic accident resulting in serious injuries to himself[2] and the officer investigating the accident had probable cause to believe that Hough

_____

[2] On the evening of December 5, 2002, Hough was unable to negotiate his car around a curve. As a result, he drove his car over the centerline, attempted to correct his steering, and drove off the road and through a wooden fence. In the collision, a wooden board crashed through the windshield and struck Hough in the eye, momentarily knocking him unconscious.

had been driving under the influence.[3] Under these circumstances, as set forth above, the investigating officer was not required to arrest Hough prior to the reading of implied consent, and Hough's consent to the blood test was valid. Accordingly, Hough's argument fails, and his conviction must stand. We therefore affirm the Court of Appeals' judgment in this case.

2. (a) In circumstances where there has been no traffic accident resulting in serious injuries or fatalities, but the investigating law enforcement officer has probable cause to believe that the suspect was driving under the influence of alcohol or other drugs, the statutory mandates of OCGA § 40-5-55 are quite different and require an arrest prior to any reading of implied consent rights.

OCGA § 40-5-55 (a), in relevant part, provides

> [A]ny person who operates a motor vehicle upon the highways or elsewhere throughout this state shall be deemed to have given consent, subject to Code Section 40-6-392, to a chemical test or tests of his or her blood, breath, urine, or other bodily substances for the purpose of determining the presence of alcohol or any other drug, *if arrested for any offense* arising out of acts alleged to have been committed in violation of Code Section 40-6-391.

(Emphasis supplied.) OCGA § 40-6-392 (a) (4) also states that "[t]he arresting officer at the time of arrest shall advise the person arrested of his rights to a chemical test or tests according to this Code section." In addition, OCGA § 40-5-67.1, which sets forth the text of the implied consent warnings, contemplates that these notices will be read after arrest. For example, OCGA § 40-5-67.1 (c) begins: "If a *person under arrest* . . . submits to a chemical test upon the request of a law enforcement officer. . . ." (Emphasis supplied.) Code Section 40-5-67.1 (d) similarly starts: "If a *person under arrest* . . . refuses, upon the request of a law enforcement officer, to submit to a chemical test. . . ." (Emphasis supplied.) Finally, the text of the implied consent warnings themselves contemplate an arrest. All three versions of the statutory implied consent warnings[4] include the following admonition: "Your refusal to submit to the required testing may be offered

---

[3] The investigating officer noticed the strong smell of an alcoholic beverage in Hough's vehicle and on his breath, Hough's passenger fled the scene after explaining to a passerby that he and Hough had been drinking at a bar, and the nature of the one-car accident supported a suspicion that Hough was impaired.

[4] Separate versions are set forth for suspects under age 21, suspects age 21 or over, and commercial motor vehicle driver suspects.

into evidence against you at trial." This admonition is more meaningful in the context where an arrest has occurred. After an arrest, an individual would believe that he or she would be actually facing charges. Otherwise, any warnings regarding a future trial would be superfluous.

"Where the language of a statute is plain and susceptible to only one natural and reasonable construction, courts must construe the statute accordingly. In fact, where the language of a statute is plain and unambiguous, judicial construction is not only unnecessary but forbidden." (Punctuation and footnotes omitted.) *Abdulkadir v. State*, 279 Ga. 122 (610 SE2d 50) (2005). Therefore, based on the plain, unambiguous wording of Georgia's implied consent statutes, we must find, employing the standard rules of statutory construction, that a suspect who is not involved in a traffic accident resulting in serious injuries or fatalities must be under arrest before implied consent rights are read to him.

The arrest necessary before the reading of implied consent, however, does not have to be a "formal arrest" in which the officer explicitly states to the suspect that he or she has been arrested. To the contrary, "[a]n arrest is accomplished whenever the liberty of another to come and go as he pleases is restrained, no matter how slight such restraint may be. The defendant may voluntarily submit to being considered under arrest without any actual touching or show of force." *Clement v. State*, 226 Ga. 66, 67 (2) (172 SE2d 600) (1970). Thus, implied consent is triggered at the point that the suspect is not free to leave and a reasonable person in his position would not believe that the detention is temporary, regardless of whether a "formal arrest" has occurred.

*Perano v. State*, 250 Ga. 704 (300 SE2d 668) (1983), does not mandate a different result. In *Perano*, the arresting officer was not able to read the implied consent rights to the suspect until 30 minutes after the arrest because, at the time of the arrest, the suspect was having an altercation with his wife who was riding as a passenger in the stopped car. On these facts, we held that the arresting officer read the implied consent rights within a reasonable time of arrest due to the need to stop the altercation and allow the suspect to calm down to a point that the reading of his rights would be meaningful to him. We warned, however, that where implied consent rights are not read "at the time of arrest, or at a time as close in proximity to the instant of arrest as the circumstances of the individual case might warrant, the results of the state-administered test will not be admissible at trial to show that the accused was driving under the influence of alcohol or drugs." Id. at 708. Those cases where the "proximity concept" has

been expanded to the reading of implied consent not only after arrest, but also before any arrest has occurred, are hereby overruled.[5]

(b) In Case No. S05G0640, Bryan Reid Handschuh contends that his refusal to submit to a blood test following a traffic accident must be suppressed because he was not arrested prior to the reading of his implied consent rights. Because the record shows that Handschuh was not involved in a traffic accident resulting in serious injuries or fatalities as set forth in OCGA § 40-5-55 (a), we agree with the Court of Appeals that his refusal should have been suppressed.

The record shows that, during the early morning hours of January 31, 2003, Handschuh drove off the side of the road, and his truck, which was equipped with an ignition interlock device, flipped over into a steep embankment. The investigating officer approached the truck and immediately noticed that the cab smelled like an alcoholic beverage. Emergency personnel removed Handschuh from the vehicle and determined that Handschuh was showing signs of paralysis in his extremities, indicating a spinal injury. The investigating officer discovered a half gallon bottle of Crown Royal, the majority of which had already been consumed, along with several unopened cans of beer inside the vehicle.

At the hospital, the officer observed that Handschuh's eyes were glassy, his breath smelled like an alcoholic beverage, his demeanor was belligerent, and his speech continued to be slurred. Based on both Handschuh's injuries and his suspicion that Handschuh had been driving under the influence, the officer informed Handschuh of his implied consent rights and asked him to submit to a blood test. Although Handschuh would not directly respond to the officer's request, Handschuh did instruct a nurse who had entered the room that he would not allow any of his blood to be drawn. The officer then informed Handschuh that this would be considered a refusal to take the state-required blood test. There was no indication of an arrest at that time, whether by citation or otherwise. In fact, Handschuh walked out of the hospital within approximately 24 hours on his own free will. Six days later, Handschuh was arrested for driving under the influence.

As an initial matter, under these facts, the investigating officer clearly had probable cause to believe that Handschuh was driving under the influence. Therefore, the implications of *Cooper* are not applicable. The question then becomes whether his implied consent rights were appropriately read to him under either the portion of

---

[5] See, e.g., *State v. Lentsch*, 252 Ga. App. 655, 658 (3) (556 SE2d 248) (2001) ("A suspect may be advised of implied consent rights and required to choose whether to submit to or refuse a state-administered chemical test even though that suspect is not under arrest.").

OCGA § 40-5-55 (a) regarding traffic accidents or the portion dealing with other DUI investigations. With regard to the former, OCGA § 40-5-55 (a) states that a traffic accident involving serious injuries or fatalities "means any motor vehicle accident in which a person was killed or in which one or more persons suffered a fractured bone, severe burns, disfigurement, dismemberment, partial or total loss of sight or hearing, or loss of consciousness." In this case, none of these situations is present, as paralysis is not listed as one of the maladies on the very specific list provided by the Legislature. Accordingly, the rules associated with the reading of implied consent to a suspect following a traffic accident with serious injuries or fatalities do not apply in this case. As such, Handschuh's implied consent rights must be analyzed under that portion of the statute regarding an individual who had been "arrested for any offense arising out of acts alleged to have been committed in violation of Code Section 40-6-391." Here, there is no question that Handschuh was not arrested until six days after the day he was read his implied consent rights. Thus, the reading of Handschuh's implied consent rights was in no way contemporaneous to his arrest for DUI. As such, we must agree with the Court of Appeals that the trial court erred by denying Handschuh's motion to suppress. However, we must disapprove of the Court of Appeals decision to the extent that it, in turn, disapproves of its decision in *Hough v. State* and other decisions which are not inconsistent with our rulings today.

*Judgments affirmed. All the Justices concur, except Hunstein, P. J., who concurs in the judgment only.*

DECIDED OCTOBER 3, 2005.

*Monte K. Davis, Victor P. Valmus*, for appellant.
*Robert Stokely, Solicitor-General, Sandra N. Wisenbaker, Assistant Solicitor-General*, for appellee.
*Gerald N. Blaney, Jr., Solicitor-General, Gary S. Vey, Jeffrey P. Kwiatkowski, Jason R. Samuels, Assistant Solicitors-General*, amici curiae.

*Jamie K. Inagawa, Solicitor-General*, for appellant.
*Sexton & Morris, Joseph S. Key*, for appellee.