**Melissa HELTON, Appellant,**

v.

**COMMONWEALTH of Kentucky, Appellee.**

No. 2008–SC–000141–MR.

Supreme Court of Kentucky.

Aug. 27, 2009.

Rehearing Denied Jan. 21, 2010.

As Modified Jan. 26, 2010.

Edward E. Dove, Lexington, KY, Counsel for Appellant.

Jack Conway, Attorney General, Joshua D. Farley, Assistant Attorney General, Attorney General's Office, Office of Criminal Appeals, Frankfort, KY, Counsel for Appellee.

Opinion of the Court by Justice
NOBLE.

Appellant Melissa Helton was convicted of multiple counts of wanton murder and several other charges stemming from a car accident in which she was driving under the influence of alcohol. The evidence that she challenges is a blood sample, which the police took at the hospital while she was unconscious or nearly so after the accident. She claims that this practice violates KRS 189A.105(2)(b), which requires a warrant to test blood in a fatality accident, and which she argues controls over the "implied consent" statute, KRS 189A.103. She also claims that even if the statutes are not in conflict, then the consent statute and

the practice of taking a blood sample from unconscious DUI suspects in general are unconstitutional.

## I. Background

On August 26, 2006, Appellant Melissa Helton drove her children, Nicholas Helton and Madison Helton, her friend Lori Lathrop, and two other children, Emily Preston and Caleb Hildebrandt, to a local creek to swim. Appellant and Lathrop drank alcohol while the children swam and played. That evening, Appellant packed Lathrop and the children into her van to drive home.

Appellant drove the van off the road and struck some trees and shrubs. Nicholas Helton, Emily Preston and Caleb Hildebrandt were killed by the impact. Madison Helton suffered a broken arm and lacerations. Lori Lathrop sustained injuries that required hospitalization; she later died from her injuries. Appellant suffered an ankle fracture and severe head lacerations.

The crash victims were all transported to the University of Kentucky Hospital. Appellant was admitted to the hospital. Sometime later, two Jessamine County Sheriff's Deputies visited Appellant, who was unconscious. Despite having no search warrant, the deputies took a blood sample, which, when tested, showed Appellant had a blood alcohol content of .16%.

Appellant was indicted for four counts of wanton murder, one count of wanton endangerment, and one count of first-offense driving under the influence. She moved to suppress the evidence of her blood alcohol level, arguing that the sample was taken without her consent and in violation of KRS 189A.105(2)(b). The trial court denied the motion, finding that Appellant "was unconscious or otherwise in a condition rendering her incapable of refusal," and thus there was "[s]tatutory consent under KRS 189A.103."

Appellant subsequently entered a conditional guilty plea to all charges, preserving for appeal the issue of whether the blood alcohol evidence should have been suppressed. She was sentenced to twenty-four years in prison.

She now appeals to this Court as a matter of right. Ky. Const. § 110(2)(b).

## II. Analysis

### A. Compliance with KRS 189A.105(2)(b)

■ Appellant's first contention is that the taking and testing of her blood violated KRS 189A.105(2)(b), which states in part that "if the incident involves a motor vehicle accident in which there was a fatality, the investigating peace officer shall seek . . . a search warrant for blood, breath, or urine testing unless the testing has already been done by consent."[1] She argues that

1. KRS 189A.105(2)(b) reads in its entirety:
   Nothing in this subsection shall be construed to prohibit a judge of a court of competent jurisdiction from issuing a search warrant or other court order requiring a blood or urine test, or a combination thereof, of a defendant charged with a violation of KRS 189A.010, or other statutory violation arising from the incident, when a person is killed or suffers physical injury, as defined in KRS 500.080, as a result of the incident in which the defendant has been charged. However, if the incident involves

a motor vehicle accident in which there was a fatality, the investigating peace officer shall seek such a search warrant for blood, breath, or urine testing unless the testing has already been done by consent. If testing done pursuant to a warrant reveals the presence of alcohol or any other substance that impaired the driving ability of a person who is charged with and convicted of an offense arising from the accident, the sentencing court shall require, in addition to any other sentencing provision,

this statute conflicts with KRS 189A.103(3)(a), presumably meaning KRS 189A.103(1),[2] which states:

> The following provisions shall apply to any person who operates or is in physical control of a motor vehicle or a vehicle that is not a motor vehicle in this Commonwealth:
>
> (1) He or she has given his or her consent to one (1) or more tests of his or her blood, breath, and urine, or combination thereof, for the purpose of determining alcohol concentration or presence of a substance which may impair one's driving ability, if an officer has *reasonable grounds to believe* that a violation of KRS 189A.010(1) or 189.520(1) has occurred . . . .

(Emphasis added.) Appellant claims that KRS 189A.105(2)(b)'s warrant requirement trumps any consent provision because it is more specific.

This argument, however, depends on the interplay between the consent provision and the possibility of a refusal to submit to testing by a suspect. KRS 189A.103 lays out a framework for implied consent. *See Commonwealth v. Hernandez–Gonzalez*, 72 S.W.3d 914, 915 (Ky.2002) (stating that implied consent was "unmistakable" after the 2000 amendment of the statute to read "has given his consent" rather than "deemed to have given his consent"); *Combs v. Commonwealth*, 965 S.W.2d 161, 164 (Ky.1998) ("KRS 189A.103 implies consent in DUI cases generally."); *Commonwealth v. Wirth*, 936 S.W.2d 78, 82 (Ky. 1996) ("By virtue of KRS 189A.103, one

who operates a motor vehicle consents to a test of his blood, breath or urine for the purpose of determining alcohol concentration.").

If a driver refuses the test, he or she effectively withdraws consent for the test. KRS 189A.105(1) states that a "refusal to submit to tests under KRS 189A.103 shall result in revocation of his driving privilege as provided in this chapter," and KRS 189A.105(2)(a) lays out requirements that an officer warn a suspect of certain things when the officer undertakes to test a person's blood, breath, or urine. Thus, it is clear that refusals are anticipated under the statutory scheme. *See also Hernandez–Gonzalez*, 72 S.W.3d at 915 (noting that suspects may avoid the test by refusing to submit, though thereby making themselves subject to other sanctions); *Wirth*, 936 S.W.2d at 82 (noting language in a prior version of the statute stating "no person shall be compelled to submit to any test" meant that a refusal to submit to testing could not be overcome by physical compulsion).

KRS 189A.105(2)(b) comes into play by requiring the officer to obtain a warrant before testing the suspect when a motor vehicle accident results in a fatality, as is the case here, unless the blood test "has already been done by consent."

There is no conflict between the statutes, however. In making this conflict argument, Appellant ignores that KRS 189A.105(2)(b) conditions its warrant requirement on the fact of testing not already having been done by consent. But

---

that the defendant make restitution to the state for the cost of the testing.

**2.** Though Appellant actually cites to "KRS 189A.103A(3)," her brief quotes language from KRS 189A.103(3)(a), which states:

Tests of the person's breath, blood, or urine, to be valid pursuant to this section, shall have been performed according to the

administrative regulations promulgated by the secretary of the Justice and Public Safety Cabinet, and shall have been performed, as to breath tests, only after a peace officer has had the person under personal observation at the location of the test for a minimum of twenty (20) minutes.

KRS 189A.103 makes consent the default rule in Kentucky. By operating a vehicle in this state, a driver gives his or her consent to certain tests, and KRS 189A.103(2) *provides further that a person who is "unconscious, or otherwise in a condition rendering him or her incapable of refusal is deemed not to have withdrawn consent...."* Though allowances are made for withdrawal of consent, this does not create a conflict between KRS 189A.105(2)(b) and KRS 189A.103. Nor does it necessarily mean that KRS 189A.105(2)(b) was violated in this case by the officer's failure to obtain a warrant, assuming of course that Appellant consented to the test.

Appellant argues that she did not consent because she was unconscious and therefore was "in no position to consent to the taking of her blood." This argument attempts to invert the default rules for consent as established by KRS 189A.103. The default, as noted above, is statutorily implied consent. The question is not whether Appellant consented (or was in a position to be able to consent), but whether she withdrew her consent. Clearly she did not refuse to submit to the test; in fact, she was unable to do so because she was unconscious or nearly so.

More importantly, the fact that Appellant was unconscious at the time did not nullify her statutory implied consent. KRS 189A.103 focuses on whether the suspect affirmatively withdraws consent by *refusing* to submit to testing. The statute specifically addresses the continuing consent of one who is unconscious, effectively nullifying the right to refuse the test in cases of incapacity to refuse. This is a public policy judgment call that is solely within the province of the legislature, *provided no constitutional rights are violated.*

This statutory aspect of Appellant's argument, therefore, is fairly simple to resolve. Appellant consented to testing by operating a vehicle in Kentucky. She did not thereafter refuse to submit to testing and therefore did not withdraw her consent. Because Appellant "consented," the officer did not violate KRS 189A.105(2)(b) in failing to get a warrant to withdraw and test her blood, but this statutory implied consent provision cannot trump a constitutional prohibition on unreasonable searches because of the Supremacy Clause.

### B. Is Implied–Consent Testing Unconstitutional?

■ The more difficult question is whether proceeding with the warrantless blood testing of an unconscious suspect under the statutory implied consent provisions without probable cause and her having an opportunity to refuse violates the protection against unreasonable searches and seizures provided by the Fourth and Fourteenth Amendments to the United States Constitution.[3] Appellant argues that because she did not consent (or rather because she did not have the opportunity to refuse); there were no exigent circumstances; and no warrant was obtained, the taking of her blood violated the Constitution.[4]

**3.** Appellant's brief makes no reference to any analogous provisions of the Kentucky Constitution. She depends solely on claims of federal constitutional violations. However, while Kentucky could expand Fourth Amendment protections, it cannot decrease them. *Beemer v. Commonwealth,* 665 S.W.2d 912, 913 (Ky.1984) ("Kentucky cannot accord less protection from searches and seizures than is afforded by the United States Constitution....").

**4.** The Commonwealth simply does not reply to this argument. Instead, it focuses only on the issue of statutory construction in resolving the alleged conflict between KRS 189A.103 and KRS 189A.105(2)(b).

The United States Supreme Court has touched on this issue of implied consent in a number of cases. For example, in *Rochin v. California*, 342 U.S. 165, 72 S.Ct. 205, 96 L.Ed. 183 (1952), the Court held that the forced, warrantless pumping of a suspect's stomach, even after officers had seen him quickly swallow some pills, was so violent and invasive as to "do more than offend some fastidious squeamishness or private sentimentalism about combating crime too energetically." *Id.* at 172, 72 S.Ct. 205. The Court concluded that "[t]his is conduct that shocks the conscience . . . [and] is bound to offend even hardened sensibilities. They are methods too close to the rack and the screw to permit of constitutional differentiation." *Id.* Thus, the Court held that such a practice violated the due process guarantee of the Fourteenth Amendment. Obviously, the defendant had not been allowed to choose.

Conduct like that involved here, the taking of a blood sample, while admittedly invasive, falls quite short of the veritable assault committed by the officers in *Rochin.* Thus, the Court in *Breithaupt v. Abram*, 352 U.S. 432, 77 S.Ct. 408, 1 L.Ed.2d 448 (1957), held that the taking of a blood sample by a doctor from an unconscious DUI suspect was but a "slight . . . intrusion" compared to that in *Rochin* and did not violate due process. *Id.* at 439, 77 S.Ct. 408. However, the Court declined to engage in a search-and-seizure analysis because at that time the federal exclusionary rule was not applicable to the states and the state in question, New Mexico, had not adopted the rule. *Id.* at 409–10.

Appellant, however, has raised the Fourth Amendment specter in this case. The closest U.S. Supreme Court case to address this issue is *Schmerber v. California*, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966). There, the defendant refused to consent to a blood test while at the hospital following a car accident. Nevertheless, a police officer had a doctor take a blood sample, which later showed the defendant had been drinking alcohol. The Court rejected claims under due process, the right against self-incrimination, and the right to counsel.

The Court also addressed a Fourth Amendment claim, the exclusionary rule having been held applicable to the states in *Mapp v. Ohio*, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961). The Court framed its Fourth Amendment analysis by stating:

> [O]nce the privilege against self-incrimination has been found not to bar compelled intrusions into the body for blood to be analyzed for alcohol content, the Fourth Amendment's proper function is to constrain, not against all intrusions as such, *but against intrusions which are not justified in the circumstances*, or which are made in an improper manner. In other words, the questions we must decide in this case are whether the police were justified in requiring petitioner to submit to the blood test, and whether the means and procedures employed in taking his blood respected relevant Fourth Amendment standards of reasonableness.

*Schmerber*, 384 U.S. at 768, 86 S.Ct. 1826 (emphasis added).

Significantly, the Court noted that the police had *probable cause to arrest* the defendant, given that he smelled of alcohol and had bloodshot, glassy eyes. When the defendant demonstrated similar symptoms at the hospital, the officer placed him under arrest. The Court stated that this alone would not have obviated the need for a warrant, since a bodily intrusion implicates interests as precious as those related to a house, and that the determination of whether an invasive search was justified should normally be left to a neutral and

detached magistrate. However, because there is a great likelihood that the defendant's body would reduce the level of alcohol in his blood as it began to process the substance, "[t]he officer . . . might reasonably have believed that he was confronted with an emergency, in which the delay necessary to obtain a warrant, under the circumstances, threatened 'the destruction of evidence'. . . ." *Id.* at 770, 86 S.Ct. 1826 (citation omitted). Thus, the test was justified under an exigent circumstances approach.

The Court also approved the test itself as reasonable, noting that blood tests are "commonplace," *id.* at 771, 86 S.Ct. 1826, and have become "routine in our everyday life," *id.* at 771 n. 13, 86 S.Ct. 1826 (citation and quotation marks omitted). More important to the Court's approval was the fact that the use of a blood sample to test blood alcohol concentration was "a highly effective means of determining the degree to which a person is under the influence of alcohol." *Id.* at 771, 86 S.Ct. 1826. Finally, the Court reasoned that the specific test in that case was reasonable, having been "taken by a physician in a hospital environment according to accepted medical practices." *Id.*

Based on these findings, the Court concluded that there was no violation of the defendant's Fourth Amendment rights. However, the Court cautioned against reading the decision as a blanket approval of bodily intrusions:

> It bears repeating, however, that we reach this judgment only on the facts of the present record. The integrity of an individual's person is a cherished value of our society. That we today hold that the Constitution does not forbid the States minor intrusions into an individual's body *under stringently limited conditions* in no way indicates that it

permits more substantial intrusions, or intrusions under other conditions.

*Id.* at 772, 86 S.Ct. 1826 (emphasis added).

In subsequent dicta, the Court has described *Schmerber* as "clearly allow[ing] a State to force a person suspected of driving while intoxicated to submit to a blood alcohol test." *South Dakota v. Neville,* 459 U.S. 553, 559, 103 S.Ct. 916, 74 L.Ed.2d 748 (1983). The Court cautioned only "that due process concerns could be involved if the police initiated physical violence while administering the test, refused to respect a reasonable request to undergo a different form of testing, or responded to resistance with inappropriate force." *Id.* at 559 n. 9, 103 S.Ct. 916.

This Court has cited to *Schmerber* in the past as holding that blood tests in DUI cases do not violate the Fourth Amendment. *See, e.g., Beach v. Commonwealth,* 927 S.W.2d 826, 828 (Ky.1996) ("The United States Supreme Court has held that a blood test does not violate the Federal Due Process Clause, the Fifth Amendment against self-incrimination, the Sixth Amendment right to counsel or the Fourth Amendment right to unlawful search and seizure."). Other times it has cited *Schmerber* more gingerly, noting that it is not a blanket approval of bodily invasive tests under the Fourth Amendment and that there are other requirements. *Hernandez–Gonzalez,* 72 S.W.3d at 915 (stating that blood test "did not constitute an unreasonable search and seizure, notwithstanding that the sample was taken without a warrant, where the police officer was justified in requiring the test and manner in which the test was performed was reasonable"); *Holbrook v. Knopf,* 847 S.W.2d 52 (Ky.1992) (noting that "*Schmerber* was, of course, a warrantless search justified on the basis of 'exigent circumstances,'" which is an exception to warrant requirement).

The case Appellant cites which is closest on point is *Cooper v. State*, 277 Ga. 282, 587 S.E.2d 605 (2003), in which the Georgia Supreme Court held unconstitutional an implied consent statute that allowed for testing of any person who had been involved in an accident resulting in serious injuries or fatalities. The court based its decision on the fact that this allowed what amounted to a search without probable cause, since it applied any time a serious accident occurred, regardless of whether there was any evidence of DUI.

*Cooper*, however, is readily distinguishable because the statute in question differs substantially from Kentucky's. Our implied consent statute only applies in situations where "an officer has *reasonable grounds* to believe that a violation of KRS 189A.010(1) or 189.520(1) has occurred," KRS 189A.103(1) (emphasis added), which is to say, when the officer has "reasonable grounds" to believe the suspect was driving under the influence. Kentucky's statute does not include a provision like that in Georgia allowing testing for *any* sufficiently serious accident. Nothing in the Kentucky implied consent statute allows it to be invoked merely because a person is involved in a serious accident. In Kentucky, there must be some suspicion of driving under the influence before implied consent can be invoked.

That *Cooper* is inapplicable is underscored by the fact that the Georgia court expressly declined to address that part of the implied consent statute that allowed

testing when there was an allegation of a violation of the state's DUI statute. *Id.* at 607 n. 3. In fact, the court later upheld that portion of the statute, distinguishing *Cooper* in the process:

> *Cooper* makes it clear that [the implied consent statute] is unconstitutional to the extent that it could be interpreted to require an individual to submit to chemical testing *solely* because that individual was involved in a traffic accident resulting in serious injuries or fatalities. On the other hand, where an individual has been involved in a traffic accident resulting in serious injuries or fatalities *and* the investigating law enforcement officer has probable cause to believe that the individual was driving under the influence of alcohol or other drugs, the constitutional infirmities at play in *Cooper* are no longer present, and the ensuing search is both warranted and constitutional. Due to the existence of probable cause, the individual being subjected to a search is, in fact, a "suspect" as contemplated by the statute.

*Hough v. State*, 279 Ga. 711, 620 S.E.2d 380, 383–84 (2005).

KRS 189A.103(1) requires "reasonable grounds" to believe that a violation of the DUI statute has occurred. To pass constitutional muster, "reasonable grounds" must equate at least to probable cause. The Kentucky consent statute is clearly far more similar to that part of the Georgia statute addressed in *Hough* than that addressed in *Cooper*.[5] The Georgia court's

---

**5.** KRS 189A.103 provides in part:

The following provisions shall apply to any person who operates or is in physical control of a motor vehicle or a vehicle that is not a motor vehicle in this Commonwealth: (1) He or she has given his or her consent to one (1) or more tests of his or her blood, breath, and urine, or combination thereof, for the purpose of determining alcohol concentration or presence of a substance which

may impair one's driving ability, if an officer has *reasonable grounds* to believe that a violation of KRS 189A.010(1) [operating a motor vehicle while under the influence of alcohol or other substance which impairs driving ability prohibited] or 189.520(1) [operating a vehicle not a motor vehicle while under the influence of alcohol or other substance which impairs driving ability prohibited] has occurred[.]

concerns about requiring probable cause could be satisfied in this case if the facts known to the officer at the time the blood test was done would support a probable cause belief that the Appellant had violated state DUI law.

But in fact, at the suppression hearing, no testimony was taken. Instead, the Commonwealth summarized what occurred at the hospital in the course of responding orally to Appellant's suppression motion. The Commonwealth informed the trial court that at the hospital the officers told Helton about implied consent, and she didn't refuse, even though she did not exactly consent either. The Commonwealth also noted that she "sort of passed out" and closed her eyes when she was asked to give consent to a test (she was being prepared for surgery on her skull and facial fractures). The Commonwealth argued that by the plain reading of the statute, she had consented by virtue of having operated a vehicle within the Commonwealth, and that the test was done "kind of on the heels of the blood test the hospital was doing anyways," and it did not involve any additional intrusion. Finally, the Commonwealth concluded its argument by saying it did not believe this was a KRS 189A.105(2)(b) situation where a warrant would be required because she did not refuse and she was not under arrest.

Based on this argument by the Commonwealth, the trial court ruled that Helton had not withdrawn her consent or refused testing of her blood, and ruled as a matter of law that she had consented.

The trial court did not take any proof about what the police knew at the time of the accident that gave them reasonable grounds to require such a test, and made no finding about whether there were reasonable grounds for such a blood test. Even though there is an apparent stipulation to the facts by defense counsel, who did not dispute them but only wanted to argue statutory construction, to make this a question of law, the trial court must apply all elements of the statute. Only by taking proof on all the necessary elements could the trial court establish whether the police officer had reasonable grounds to require a blood test. The trial court must know more than just that the defendant was unconscious under KRS 189A.103(2).

While the minor intrusion of a blood test, at least under circumstances like these, is not unreasonable and *the lack of a warrant is* justified by an exigent-circumstances concern that the alcohol evidence in the blood will be destroyed in a short period of time by the human body's natural ability to metabolize alcohol, our statute (and the Constitution) require more. Specifically, the Kentucky statute requires "reasonable grounds" to believe that a person was driving under the influence before a blood test can be done. When "reasonable grounds" is read to mean probable cause, the statute satisfies *Schmerber's* requirement that the "intrusion[ ] ... [is] justified in the circumstances" and that "the police were justified in requiring [Appellant] to submit to the blood test...." 384 U.S. at 768, 86 S.Ct. 1826.

(3) The breath, blood, and urine tests administered pursuant to this section shall be administered at the direction of a peace officer having *reasonable grounds* to believe the person has committed a violation of KRS 189A.010(1) or 189.520(1).
. . .

(5) When the preliminary breath tests, breath tests, or other evidence gives the officer *reasonable grounds* to believe there is impairment by a substance which is not subject to testing by a breath test, then blood or urine tests, or both, may be required....
(Emphasis added.)

The record in this case, however, simply does not reveal whether the officer had probable cause to believe that alcohol was involved in the wreck.[6] If the blood test was done merely because there were fatalities, then it runs afoul of the same concerns the Georgia Supreme Court considered in *Cooper*: a lack of probable cause to conduct the search. While *Schmerber* recognizes that such a search does not automatically violate the Fourth Amendment, given the existence of exigent circumstances, that case emphasized that the facts of the case are determinative and that those facts must be such as to justify the search. Kentucky's statute satisfies these requirements by requiring "reasonable grounds," which this Court reads as requiring probable cause.

When the officer does have reasonable grounds, the test may be done on a person, even if she is unconscious, without violating the Fourth Amendment. If, as in *Schmerber*, the state can require a *conscious* person, who has actually *refused*, to submit to the blood test due to exigent circumstances and the existence of probable cause, then it makes no difference what a person's state of consciousness is. But this step is not reached at all unless the officer had probable cause to search in the first place.

Consequently, this Court's review of the blood test search in this case turns on whether the officer had probable cause to believe that Appellant had violated the DUI statutes when he requested the blood test. Unfortunately, that is not in the record, meaning that the trial court did not engage in the whole analysis necessary to decide Appellant's suppression motion.

### Conclusion

The judgment is hereby vacated and this case is remanded for a new suppression hearing to determine whether the evidence establishes that the police had reasonable grounds to believe alcohol was involved in the accident.

MINTON, C.J.; ABRAMSON, CUNNINGHAM, SCHRODER and VENTERS, JJ., concur.

SCOTT, J., dissents by separate opinion.

SCOTT, Justice, dissents:

Although I concur on all other grounds, I respectfully dissent from my esteemed colleagues' opinion that a retroactive hearing is required to show that the trooper had reasonable grounds to justify testing Ms. Helton's blood alcohol level. I dissent because Appellant concedes in her brief that "[t]he Commonwealth certainly had belief that alcohol had been involved in the accident on August 26th, 2006." *Appellant's Brief*, at pg. 9. Thus, Appellant's attack at trial and on appeal was on constitutional and statutory grounds, not factual ones. Trial courts need the leeway to perform those trial tasks that they and counsel consider appropriate under the pertinent facts of each case. Hearings on matters conceded by counsel unduly interfere with this valuable discretion.

---

**6.** The dissent relies on the statement in Appellant's brief that "[t]he Commonwealth certainly had belief that alcohol had been involved in the accident on August 26, 2006" to conclude that there was probable cause. However, a "belief" alone is insufficient to satisfy the rigors of probable cause, especially where no evidence that could support such a finding was put forth at the suppression hearing. As noted above, the trial court took no proof on what the officers knew at the time or what their belief was, thus it does not matter that the record now discloses that Appellant had been drinking that day. Moreover, an "admission" like this in a brief is more the product of loose use of language by appellate counsel rather than a true admission. That there was no evidence to support probable cause and no judicial finding of probable cause should control, not an inadvertent "admission."

The record shows that Appellant took her children, an adult friend, and two other children swimming. She consumed alcohol, resumed driving, and drove her vehicle off the road. Her son and his young friends were killed and the adult friend died later from her injuries. Appellant was accompanied to the hospital by the police who informed her of the effect of her refusal under KRS 189A.105(2)(a). The officers perceived Appellant to be in a stupor incapable of refusal and took a blood test under the implied consent of KRS 189A.103(2). The reasonable grounds of drunk driving required by 189A.103(1) would appear satisfied by Appellant's concession as well as the circumstances that the police accompanied Appellant from the driver's seat of a horrific accident to the hospital where she was effectively uncommunicative; not to mention that at the suppression hearing the Commonwealth informed the trial court that *at the time the blood test was taken* the officers informed Helton about implied consent and that she did not refuse, but just "sort of passed out" and closed her eyes.

I, therefore, respectfully dissent.