**FOURTH DIVISION**
**RICKMAN, C. J.,**
**DILLARD, P. J., and PIPKIN, J.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**March 22, 2023**

# In the Court of Appeals of Georgia

A23A0024. QUINT v. THE STATE.

DILLARD, Presiding Judge.

Following trial, a jury convicted Tracie Quint on one count of driving under the influence of alcohol to the extent that she was a less-safe driver (DUI less-safe)[1] and one count of failure to maintain lane.[2] Quint appeals, contending the trial court erred in denying her motion to suppress evidence that she refused to consent to the State-administered blood test. Specifically, she argues law enforcement did not place her under arrest prior to reading the implied-consent notice as required by Georgia statutory and case authority. We disagree and affirm.

---

[1] *See* OCGA § 40-6-391 (a) (1).

[2] *See* OCGA § 40-6-48.

Viewed in the light most favorable to the trial court's ruling,[3] the record shows that on the night of May 12, 2019, Gwinnett County firefighters, EMS, and police officers were dispatched to the scene of a one-vehicle accident. Firefighters and EMS arrived first and observed that a vehicle had run off the road, crashed into a metal fence, and caught on fire. Firefighters quickly extinguished the fire, and an EMT attended to the injured driver—who was ultimately identified as Quint. Although Quint had cuts on her head and face, she was able to walk and did not appear to be seriously injured.

In short order, the first police officer arrived on the scene and observed that Quint was sitting on the sidewalk away from her vehicle, was unsteady when she rose

---

[3] *See, e.g.*, *State v. Dykes*, 345 Ga. App. 721, 722 (1) (815 SE2d 106) (2018) (noting that, in reviewing a trial court's ruling on a motion to suppress, we construe the record in the light most favorable to the factual findings of the trial court). The parties and trial court reference an initial hearing on Quint's motion to suppress, but the parties' briefs do not contain specific citations to a transcript of that hearing. In fact, it is unclear if that hearing was transcribed. In any event, no such transcript was included in the appellate record. Even so, both parties support their respective arguments by citing to the trial transcript, which apparently included the same evidence presented at the earlier suppression hearing. And given these circumstances, we similarly base our ruling on the evidence presented at trial. *See Salter v. State*, 198 Ga. App. 242, 242 (401 SE2d 541) (1990) (explaining that we will review a suppression decision based on evidence contained in the trial transcript when no transcript of the motion-to-suppress hearing is included in the appellate record and neither party objects to the absence of such a transcript).

2

her feet, and had cuts to her face. The officer also noticed that Quint slurred her speech, was inattentive, and did not want to receive medical treatment. And within a few minutes, a second officer arrived and similarly found Quint to be disoriented, slurring her speech, and refusing medical treatment. Both officers also smelled an alcoholic-beverage odor emanating from Quint; and when asked, she claimed to have had two glasses of wine earlier in the evening.

At this point, the second officer advised Quint that she should go to the hospital for treatment. But when Quint stated that she wanted to go home, the EMT—as seen and heard on the officer's body-camera footage—responded, "We can't do that. We can either take you to the hospital or you are going to jail." Eventually, after stating several times that she wanted to go home and being told she could not do so, Quint agreed to be transported to the hospital for treatment. And just prior to leaving for the hospital, the second officer informed Quint that—based on his investigation of the accident—he was going to place her under arrest for driving under the influence of alcohol. He then read her Georgia's implied-consent notice for drivers over the age of 21, but Quint responded that she would not submit to a State-administered blood test.

3

The State charged Quint, via accusation, with one count of DUI less-safe and one count of failure to maintain lane. Quint filed a motion to suppress her refusal to submit to the State-administered blood test, arguing that she was never placed under arrest and Georgia's constitutional right against self-incrimination barred admission of her refusal. And after a hearing, the trial court granted Quint's motion on the ground that the State constitutional right against self-incrimination barred admission of evidence of her refusal to submit to the State-administered breath test.[4] But several months later, the State filed a motion in limine, arguing, *inter alia*, that Quint's refusal to submit to the State-administered *blood* test was not barred. And following a second hearing on the matter, the trial court agreed and ruled that her refusal to do so would be admissible at trial.[5]

---

[4] *See Elliott v. State*, 305 Ga. 179, 223 (IV) (E) (824 SE2d 265) (2019) (concluding that the Georgia Constitution precludes admission of evidence that a suspect refused to consent to a breath test).

[5] *See State v. Johnson*, 354 Ga. App. 447, 456-57 (1) (b) (841 SE2d 91) (2020) (holding that State constitutional right against self-incrimination did not prohibit admission of evidence of defendant's prior refusal to submit to blood-alcohol test); *see also Elliott*, 305 Ga. at 224 (Boggs, J, concurring) (noting that the scope of the holding in *Elliott* barring evidence that a suspect refused to consent to a breath test does not apply to tests of a driver's blood).

The case then proceeded to trial, during which the State presented evidence of Quint's refusal to submit to the State-administered *blood* test. And at the conclusion of the trial, the jury found Quint guilty on both counts in the accusation. Quint then filed a motion for new trial, arguing, *inter alia*, that the trial court erred in admitting her refusal to submit to the State-administered blood test because officers never made it clear that she was being arrested. But after a hearing, the trial court denied her motion. This appeal follows.

In her sole enumeration of error, Quint maintains the trial court erred in denying the motion to suppress her refusal to consent to the State-administered blood test, arguing that she was not placed under arrest prior to the reading of the implied-consent notice as required by Georgia statutory and case authority. We disagree.

In reviewing the trial court's ruling on a motion to suppress, we generally must "(1) accept a trial court's findings unless they are clearly erroneous, (2) construe the evidentiary record in the light most favorable to the factual findings and judgment of the trial court, and (3) limit its consideration of the disputed facts to those expressly found by the trial court."[6] But this Court reviews *de novo* the trial court's "application

---

[6] *State v. Jacobs*, 342 Ga. App. 476, 477 (804 SE2d 132) (2017) (punctuation omitted); *see Hughes v. State*, 296 Ga. 744, 746 (1) (770 SE2d 636) (2015) (holding that it is generally for the trial court to determine the facts in ruling on a motion to

5

of law to the undisputed facts."[7] Bearing these guiding principles in mind, we turn now to Quint's only claim of error.

Our analysis necessarily begins with the text of OCGA § 40-5-55 (a), which provides, in relevant part, that:

> [A]ny person who operates a motor vehicle upon the highways or elsewhere throughout this state shall be deemed to have given consent, subject to Code Section 40-6-392, to a chemical test or tests of his or her blood, breath, urine, or other bodily substances for the purpose of determining the presence of alcohol or any other drug, *if arrested* for any offense arising out of acts alleged to have been committed in violation of Code Section 40-6-391.[8]

Additionally, OCGA § 40-6-392 (a) (4) provides that "[t]he arresting officer at the time of arrest shall advise the person arrested of his rights to a chemical test or tests

---

suppress evidence and, thus, an appellate court generally must (1) accept a trial court's findings unless they are clearly erroneous, (2) construe the evidentiary record in the light most favorable to the factual findings and judgment of the trial court, and (3) limit its consideration of the disputed facts to those expressly found by the trial court).

[7] *Jacobs*, 342 Ga. App. at 477 (punctuation omitted); *see Hughes*, 296 Ga. at 750 (2) ("Although we owe substantial deference to the way in which the trial court resolved disputed questions of material fact, we owe no deference at all to the trial court with respect to questions of law, and instead, we must apply the law ourselves to the material facts.").

[8] (Emphasis supplied).

according to this Code section." And OCGA § 40-5-67.1 (c) begins: "If a person *under arrest* . . . submits to a chemical test upon the request of a law enforcement officer . . ."[9] Finally, OCGA § 40-5-67.1 (d) similarly begins: "If a person *under arrest* . . . refuses, upon the request of a law enforcement officer, to submit to a chemical test . . ."[10] This statutory language is plain and unambiguous.

And importantly, when the language of a statute is "plain and susceptible to only one natural and reasonable construction, courts must construe the statute accordingly."[11] Indeed, when the language of a statute is plain and unambiguous, "judicial construction is not only unnecessary but forbidden."[12] And given this statutory background (most notably its frequent reference to a suspect being "under arrest"), the Supreme Court of Georgia has held that "a suspect who is not involved

---

[9] (Emphasis supplied).

[10] (Emphasis supplied).

[11] *Hough v. State*, 279 Ga. 711, 716 (2) (a) (620 SE2d 380) (2005) (punctuation omitted); *accord Mays v. State*, 345 Ga. App. 562, 564 (814 SE2d 418) (2018).

[12] *Hough*, 279 Ga. at 716 (2) (a) (punctuation omitted); *accord Mahone v. State*, 348 Ga. App. 491, 493 (2) (823 SE2d 813) (2019).

in a traffic accident resulting in serious injuries or fatalities must be under arrest before implied consent rights are read to him."[13]

Citing this requirement, Quint maintains the evidence is unclear as to whether the police officer arrested her before reading the implied-consent notice. So, in her view, the trial court erred in ruling that her refusal to submit to the State-administered blood test was admissible at trial. This argument is a non-starter.

An arrest is accomplished whenever

> the liberty of another to come and go as he pleases is restrained, no matter how slight such restraint may be. The defendant may voluntarily submit to being considered under arrest without any actual touching or show of force. Thus, implied consent is triggered at the point that the suspect is not free to leave and a reasonable person in his position would not believe that the detention is temporary, regardless of whether a "formal arrest" has occurred.[14]

---

[13] *Hough*, 279 Ga. at 716 (2) (a); *accord Canelas v. State*, 345 Ga. App. 497, 503 (3) (813 SE2d 170) (2018).

[14] *Hough*, 279 Ga. at 716 (2) (a) (punctuation and citation omitted); *accord Canelas*, 345 Ga. App. at 504 (3); *see Plemmons v. State*, 326 Ga. App. 765, 768 (1) (755 SE2d 205) (2014) (explaining that the adequacy of implied-consent notice depends upon whether the suspect was formally arrested or restrained to a degree associated with a formal arrest, and not whether the police had probable cause to arrest, thus, the test is whether a reasonable person in the suspect's position would have thought the detention would not be temporary).

8

Additionally, whether a suspect is under custodial arrest is a "mixed question of law and fact."[15] As a result, if the determination of that issue "hinges on resolution of factual questions," we must construe the evidence "most favorably to uphold the trial court's findings and accept those findings unless they are clearly erroneous"; but "independently apply the legal principles to those facts."[16]

Here, Quint's claim that she had not been arrested when the officer read her the implied-consent notice is belied by the record. As discussed *supra*, while being treated by the EMT at the scene of the accident, Quint repeatedly asked to be taken home and was told by the police officers that she could either go to the hospital or be taken to jail. And even if she was somehow uncertain after this back-and-forth whether her detention would not be temporary, the record explicitly shows one of the officers informing her that she was being placed under arrest for driving under the influence of alcohol. Indeed, shortly after informing Quint of her arrest, the same officer read her the implied-consent notice, at which point she refused to submit to the State-administered blood test. Given these circumstances, the evidence authorized

---

[15] *Plemmons*, 326 Ga. App. at 768 (1) (punctuation omitted); *accord Canelas*, 345 Ga. App. at 504 (3).

[16] *Plemmons*, 326 Ga. App. at 768 (1) (punctuation omitted); *accord Canelas*, 345 Ga. App. at 504 (3).

9

the trial court to find that, at the time the officer read the implied-consent notice to Quint, a reasonable person in her position would have believed she was under arrest.[17] Consequently, the trial court did not err in admitting her refusal to submit to the State-administered blood test into evidence.

*Judgment affirmed. Rickman, C. J., and Pipkin J., concur.*

---

[17] *See Canelas*, 345 Ga. App. at 504-05 (3) (holding evidence defendant was hospitalized following single-vehicle accident and that officer told defendant he was "under arrest for driving under the influence less safe" before requesting that he submit to chemical test was sufficient to support trial court's determination that defendant was under arrest within scope of implied-consent statute); *Plemmons*, 326 Ga. App. at 768 (1) (concluding trial court was authorized to find that a reasonable person in the suspect's position would not think that he was free to leave at the time an officer read the implied-consent warnings when the officer, in the suspect's hospital room after an accident, wrote a ticket for DUI, told the suspect that he was under custodial arrest, gave him the ticket, and then read him the implied-consent notice); *see also Hughes v. State*, 259 Ga. 227, 228 (1) (378 SE2d 853) (1989) (holding trial court was authorized to find that a traffic stop escalated to an arrest when the officer, who was waiting for assistance from other officers, told the driver that he was not free to leave).