LAMBERT, D., JUDGE:
The Commonwealth brings this appeal from an interlocutory order of the Breckinridge Circuit Court which granted the motion of the Appellee, Julia A. Brown, to suppress the results of blood alcohol testing. Having reviewed the record, we conclude that the trial court improperly concluded that Brown did not give express consent. Consequently, we reverse the trial *875 court's suppression order and remand the matter for trial.
I. FACTUAL AND PROCEDURAL HISTORY
On December 26, 2014, at approximately 9:07 P.M. Central Standard Time, as Brown drove near Hardinsburg, she lost control and hit a tree. The crash killed her passenger, Sheena McCarty, and severely injured Brown. Paramedic Raleigh Shelton responded to the accident, and upon his arrival observed Brown talking on her cellular phone. Shelton testified that after determining McCarty had died, he assessed Brown's injuries, though he was not directly involved in her care. At some point, Shelton allegedly heard Brown admit that she had been drinking. After rescue workers extricated her from the vehicle, she was airlifted to University of Louisville Medical Center for more intensive treatment.
Hardinsburg City Police Officer Justin Magness worked the accident scene and was present when Shelton pronounced McCarty dead. Trooper Jason Drane of the Kentucky State Police ("KSP") was also present, and it was his call to the local KSP Post which resulted in Trooper John Adams traveling from Nelson County to meet Brown at University of Louisville Medical Center to obtain a blood sample from her.
Adams testified at the suppression hearing that he had arrived before the helicopter and waited in the trauma room for twenty to thirty minutes for Brown to arrive. Adams further waited while doctors stabilized her. He noted the smell of alcohol on Brown's breath as well as on her person. She also had an obvious head injury, which Adams described as "a deep gash on her forehead that parted her hair," and a broken leg. Adams twice testified that he "allowed the medical staff to do their thing," and waited for a doctor's permission before speaking to Adams. Brown was still strapped to a backboard when Adams engaged her. He offered testimony that during this conversation, Brown recalled that there had been a collision, but neither recalled the specifics of the collision nor understood why Adams was there.
Adams proceeded to read the standard KSP implied consent warning to her, which he also read into the record at the suppression hearing. The warning, which is adapted from the language of Kentucky Revised Statute ("KRS") 189A.105, includes warnings that refusal to submit to testing would result in a doubled jail sentence if convicted, her driver's license being suspended, and being ineligible for an ignition interlock license. Adams testified that he stopped after each paragraph of the warning to ask Brown whether she understood the warning, and she responded in the affirmative each time. He then asked for permission to obtain a blood sample, and "she told me that was fine." No written evidence was entered into the record indicating her agreement, and Brown did not testify at the suppression hearing.
Adams testified that at approximately 11:46 P.M. Eastern Standard Time, he opened the test kit and directed medical personnel to draw the sample in his presence, of which he took custody. Adams remitted the sample to the KSP Crime Laboratory at the end of his shift. The lab determined Brown's blood alcohol content was .125, well over the legal limit of .08.
Hospital personnel drew a second sample of Brown's blood at 12:23 A.M. Eastern Standard Time, for the purpose of medical treatment. Adams, having already left after obtaining the first blood sample, was not present for that test, which indicated a blood alcohol content of .164. Testimony in *876 the suppression hearing indicated that the KSP laboratory and the hospital use two different "scales" for determining blood alcohol content, with the hospital's scale typically yielding higher readings. The Commonwealth later obtained this test result via subpoena of Brown's medical records.
Brown was not charged in connection with the wreck until months after the accident. In May 2015, the Grand Jury indicted Brown for second-degree manslaughter, DUI (aggravated pursuant to KRS 189A.010(11)(c) ), and driving without an operator's license. She moved to suppress the test results, arguing that KRS 189A.010(1)(a) requires the test to be administered within two hours of the cessation of operation of a motor vehicle and that KRS 189A.105(2)(b) requires a warrant to obtain a blood draw and testing in fatal automobile accidents.
The trial court granted the suppression motion, based on the factual finding that Brown did not consent and law enforcement failed to obtain a warrant prior to obtaining the sample. The trial court also specifically found that the first blood draw had been taken within the two-hour period. As to the second blood draw, the trial court opined that significant chain-of-custody problems and other issues precluded its admission.[1] This appeal followed.
II. ANALYSIS
A. STANDARD OF REVIEW
The Commonwealth contends that the trial court erred in granting Brown's suppression motion. Our analysis of trial court rulings on suppression motions involves a two-stage review, using a clear error standard for factual findings and a de novo standard for legal conclusions. Greer v. Commonwealth , 514 S.W.3d 566, 568 (Ky. App. 2017) (quoting Jackson v. Commonwealth , 187 S.W.3d 300 (Ky. 2006) ).
B. THE TRIAL COURT COMMITTED CLEAR ERROR IN FINDING THAT BROWN DID NOT CONSENT
The trial court found that Brown did not give express consent. If substantial evidence supports a trial court's factual finding, it does not present a clear error. Gosney v. Glenn , 163 S.W.3d 894 (Ky. App. 2005). The question of the voluntariness of an expressly given consent is determined after "careful scrutiny all of the surrounding circumstances in a specific case." Cook v. Commonwealth , 826 S.W.2d 329 (Ky. 1992). The Commonwealth must prove voluntariness by a preponderance of the evidence standard ( Id. at 331 (citing U.S. v. Matlock , 415 U.S. 164, 94 S.Ct. 988, 39 L.Ed. 2d 242 (1974) ), but the trial court must conduct "an objective evaluation of police conduct and not ... the defendant's subjective perception of reality." Cook at 331, (citing Colorado v. Connelly , 479 U.S. 157, 107 S.Ct. 515, 93 L.Ed. 2d 473 (1986).
Here, the trial court considered the facts presented before it, including Adams' own testimony indicating his awareness that Brown had a head injury, she did not recall the circumstances of the crash, and she did not know the reason for Adams' presence, all before Adams read the implied consent warning to her. Adams did, however, testify that he had obtained clearance from medical personnel to speak with Brown. Further, no witness offered testimony as to the severity of Brown's head injury, or that she had received medication during her treatment that clouded *877 her ability to think or to reason. Nonetheless, the trial court then made an oral finding at the hearing, based on its own speculation as to Brown's physical condition at the time, that Adams had not acted reasonably in obtaining Brown's consent because she "was too severely injured or too intoxicated or both to understand and provide a free, knowing, intelligent, and voluntary consent." No such finding made its way into the trial court's written suppression order.
In light of the evidence, we find fault in the trial court's finding as to express consent. Examining Adams' conduct objectively, rather than from Brown's subjective position, reveals no error by Adams. He waited until after medical personnel cleared Brown to speak with her. He read the implied consent warning to her, and she indicated her understanding of the warning three times. He then asked her permission for a blood draw and received an answer indicating agreement. The Commonwealth offered sufficient evidence to meet its burden of proving voluntariness by a preponderance of the evidence.
Given the absence of medical evidence of record, we cannot agree that the trial court's oral findings regarding Brown's capacity to consent are supported by substantial evidence. We must therefore conclude that the trial court's factual findings on this issue are clearly erroneous.
The Commonwealth argues that in the absence of express consent, the inquiry must naturally move to the presence of implied consent. KRS 189A.103 provides in relevant part:
The following provisions shall apply to any person who operates or is in physical control of a motor vehicle ... in this Commonwealth:
(1) He or she has given his or her consent to one (1) or more tests of his or her blood, breath, and urine ... for the purpose of determining alcohol concentration or presence of a substance which may impair one's driving ability, if an officer has reasonable grounds to believe that a violation of KRS 189A.010(1) [driving under the influence of alcohol] or 189.520 [driving under the influence of other intoxicants] has occurred;
(2) Any person who is dead, unconscious, or otherwise in a condition rendering him or her incapable of refusal is deemed not to have withdrawn the consent provided in subsection (1) of this section, and the test may be given;
(3) The breath, blood, and urine tests administered pursuant to this section shall be administered at the direction of a peace officer having reasonable grounds to believe the person has committed a violation of KRS 189A.010(1) or 189.520(1).
The Kentucky Supreme Court has previously held that the purpose of KRS 189A.103(2)[2] is to create a presumption that the testing is lawful. Speers v. Commonwealth , 828 S.W.2d 638, 640 (Ky. 1992). The Kentucky Supreme Court has also held that " '[b]y virtue of KRS 189A.103, one who operates a motor vehicle consents to a test of his blood, breath or urine for the purpose of determining alcohol concentration.' " Helton v. Commonwealth , 299 S.W.3d 555, 558 (Ky. 2009) (quoting Commonwealth v. Wirth , 936 S.W.2d 78, 82 (Ky. 1996) ). An explicit refusal, according to Helton , operates as a withdrawal of the implied consent which *878 every driver gives by their mere presence behind the wheel on a Kentucky road. Id.
The general rule, established by KRS 189A.103, is that every driver consents by default to such testing by virtue of driving on Kentucky roadway. Helton at 559.
The United States Supreme Court, in Birchfield v. North Dakota , --- U.S. ----, 136 S.Ct. 2160, 195 L.Ed.2d 560 (2016), held that "[t]here must be a limit to the consequences to which motorists may be deemed to have consented by virtue of a decision to drive on public roads." Id. at 2185. One of the defendants in Birchfield , who had been advised that North Dakota state law required his submission to testing, challenged the North Dakota implied consent statute in that it went beyond "impos[ing] penalties on motorists who refuse to undergo testing when there is sufficient reason to believe they are violating the State's drunk-driving laws[,]" and made it a separate offense "for a motorist to refuse to be tested after being lawfully arrested for driving while impaired." Id. at 2166.
Federal Supreme Court opinions have repeatedly affirmed statutory schemes which impose administrative or civil sanctions or create evidentiary penalties. "Our prior opinions have referred approvingly to the general concept of implied-consent laws that impose civil penalties and evidentiary consequences on motorists who refuse to comply." Id. at 2185 (citing Missouri v. McNeely , 569 U.S. 141, 133 S.Ct. 1552, 185 L.Ed. 2d 696 (2013) ; South Dakota v. Neville , 459 U.S. 553, 103 S.Ct. 916, 74 L.Ed. 2d 748 (1983) ). It is the use of new criminal charges to strong-arm an accused into consent for a blood test which the Supreme Court found so repugnant. "It is another matter, however, for a State not only to insist upon an intrusive blood test, but also to impose criminal penalties on the refusal to submit to such a test." Id.
Kentucky's statutory scheme differs from North Dakota's in that it enhances the eventual penalties for refusing, rather than creating a new crime of refusal to submit to testing. DUI incidents which result in fatalities implicate the aggravating factor defined in KRS 189A.010(11)(c) and require a minimum sentence of four days in jail upon conviction. Because the provisions of KRS 189A.010(5), 189A.010(11)(e), and KRS 189A.105, work in concert to double that mandatory minimum sentence to eight days when the defendant refuses to consent, the trial court relied on Birchfield in concluding that Kentucky's implied consent scheme is coercive. We disagree.
The other consequences of refusal are clearly administrative or evidentiary in nature, and the doubling of a mandatory minimum jail sentence is unquestionably a criminal sanction. Yet, that sanction is contingent on conviction on the underlying charge. It differs significantly in its effect from the statutes examined by the Supreme Court in Birchfield. It lacks the coercive force of mandating the accused undergo an intrusive test or else accrue an additional criminal charge. Indeed, if a defendant faces a first-offense DUI charge without any aggravating circumstances, or is not convicted on an aggravated DUI charge, the sanction does not even apply. We conclude that Birchfield does not apply to the instant situation, and no Fourth Amendment violation occurred. Thus, the trial court committed reversible error in excluding the blood test results.
C. BROWN'S EXPRESS CONSENT OBVIATED THE NEED FOR A WARRANT TO OBTAIN THE BLOOD SAMPLE
Brown also argues that KRS 189A.105(2)(b) required Adams to obtain a warrant before the administration of the *879 blood test, regardless of consent. We reject this argument, however, as the Kentucky Supreme Court held in 2002 that KRS 189A.105 does not apply to instances where the defendant, at the time of the request for testing, has not been charged in connection with a crash resulting in a fatality. Commonwealth v. Morriss , 70 S.W.3d 419 (Ky. 2002). In Morriss , the defendant drove through an intersection and collided with another vehicle, killing a passenger in the second vehicle, and severely injuring himself. While in the hospital, the defendant was not yet charged in connection with the fatal crash, but a warrant was issued, under KRS 189A.105(2)(b), compelling him to submit to the collection of samples pursuant to KRS 189A.103. Id. at 420. The Supreme Court, in ordering the case remanded to the trial court, opined:
Where there is death or physical injury and the subject has been charged with a qualifying offense, if there is a refusal the statute applies and a search warrant may be obtained. However, where there is death or physical injury but no charge has yet been brought, 189A.105(2)(b) does not apply and traditional search and seizure principles control.
Id. at 421.
"Consent is one of the exceptions to the requirement for a warrant." Cook v. Commonwealth , 826 S.W.2d 329, 331 (Ky. 1992) (citing U.S. v. Watson , 423 U.S. 411, 96 S.Ct. 820, 46 L.Ed. 2d 598 (1976) ). Having already determined that Brown expressly consented, it follows that Adams did not need a warrant. Brown's Fourth Amendment rights were not violated, and the trial court improperly excluded the evidence.
III. CONCLUSION
Having reviewed the record and concluding that Brown consented to the blood testing, and further concluding that no warrant was required due to that consent, we must also conclude that the trial court erred in suppressing the results of the blood test overseen by Adams. Accordingly, we reverse the trial court's ruling regarding the suppression, and remand for trial proceedings.
LAMBERT, J., JUDGE, CONCURS.
ACREE, JUDGE, CONCURS AND FILES A SEPARATE OPINION.
I concur because Brown knowingly and voluntarily consented to have her blood sample drawn. "It is well established that a search is reasonable when the subject consents[.]" Birchfield v. North Dakota , --- U.S. ----, 136 S.Ct. 2160, 2185, 195 L.Ed. 2d 560 (2016) (citing Schneckloth v. Bustamonte, 412 U.S. 218, 219, 93 S.Ct. 2041, 36 L.Ed. 2d 854 (1973) ). The additional analysis regarding implied consent is, therefore, unnecessary dicta. The impact of Birchfield on our jurisprudence will certainly have to be addressed at some point. However, I do not believe it is necessary to do so in the case. Consequently, I neither agree nor disagree with the portion of the opinion analyzing Birchfield .

The Commonwealth excluded the trial court's suppression of the second blood test from its Notice of Appeal; therefore, that ruling is not before this Court.

In Speers , the Kentucky Supreme Court analyzed KRS 186.565, a former provision regarding implied consent which was repealed by the legislature that replaced the provisions of KRS Chapter 186 with KRS Chapter 189A.