RENDERED: OCTOBER 30, 2020; 10:00 A.M.
TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2018-CA-0840-MR

COMMONWEALTH OF KENTUCKY              APPELLANT

v.              APPEAL FROM PERRY CIRCUIT COURT
HONORABLE ALISON C. WELLS, JUDGE
ACTION NO. 17-CR-00199

HOLLY COMBS              APPELLEE

## OPINION
## REVERSING AND REMANDING

** ** ** ** **

BEFORE: COMBS, JONES, AND K. THOMPSON, JUDGES.

THOMPSON, K., JUDGE: The Commonwealth of Kentucky appeals from the Perry Circuit Court's interlocutory order granting Holly Combs's motion to suppress her blood test following her arrest for DUI. The Commonwealth argues that the circuit court erred because Combs validly offered her consent after being read the implied consent warnings.

On August 6, 2017, Combs hit two pedestrians with her car while they were walking through a crosswalk in front of a Walmart entrance in Hazard, Kentucky. After her arrest, police read Combs the implied consent warnings, which included the information that if she refused consent and was convicted of DUI, her mandatory minimum sentence would be doubled. Combs consented to the blood draw and the results of her blood test were incriminating.[1]

On October 9, 2017, Combs was indicted for one count of first-offense driving under the influence, three counts of first-degree wanton endangerment, one count of no registration plates, one count of no insurance, one count of first-degree possession of a controlled substance, two counts of second-degree assault, one count of prescription drugs not in the proper container, and one count of being a second-degree persistent felony offender. Combs filed a motion to suppress the results of her blood test, arguing "the taking of the blood test through coercion of the implied consent warning without a search warrant is unconstitutional" and "the implied consent law is unconstitutional[.]"

At the suppression hearing held on April 23, 2018, Officer John Holbrook testified for the Commonwealth and Combs testified for the defense.

---

[1] The toxicology report was not introduced into the record. The Commonwealth submitted it in response to a motion to show cause why the case should not be dismissed for lack of jurisdiction, arguing the suppressed results were vital to its case. The toxicology report itself, beyond the fact that it was incriminating, is not relevant on appeal.

Officer Holbrook testified that when he was investigating what happened, Combs volunteered to him that she takes Suboxone and Keppra for seizures. Officer Holbrook administered field sobriety tests and recognized many signs of intoxication, the specifics of which he testified to, before arresting Combs for DUI. Officer Holbrook testified that in a search of Combs's purse incident to arrest, he found a prescription bottle for buprenorphine which contained five and a half pills of buprenorphine and two Xanax bars.

Officer Holbrook testified there was no odor of alcohol on Combs or her vehicle and based on all of the circumstances, he believed Combs was impaired by drugs or medication and determined that a blood test would be needed to determine what substances were causing her impairment. Therefore, he took Combs to Hazard Appalachian Regional Hospital (ARH) for a blood draw. According to Officer Holbrook, while at ARH Combs told him that she had gotten out of such charges before because she has seizures.

Officer Holbrook testified he read Combs the implied consent warnings. After she tried and failed to reach an attorney, Combs consented to a blood draw and signed paperwork at ARH. Officer Holbrook testified that the blood draw was performed but he did not know the results of the blood test.

Officer Holbrook testified that after the blood draw he took Combs to the Kentucky River Regional Jail (KRRJ). Before taking her inside, he asked

Combs if she had any illegal substances on her and warned her that taking such substances inside would be a felony; Combs denied having any illegal substances. Officer Holbrook testified that while they were in the entrance of KRRJ, he noticed a substance sticking out of Combs's sock which he seized; the substance was later determined to be methamphetamine. According to Officer Holbrook, Combs told him that she was taking the drug to her boyfriend at KRRJ.

Officer Holbrook testified he reviewed surveillance video from Walmart and saw Combs's car drive through the Walmart crosswalk, which was occupied by five people. Combs made no attempt to stop and hit two people while the others jumped back. He testified the injured pedestrians were sisters, an eleven-year-old and an eighteen-year-old.

Officer Holbrook acknowledged that in the police report, which he prepared approximately two days after the accident, he did not mention Combs's statements that she had beaten such charges before or that she was taking the methamphetamine to her boyfriend at the jail. He also acknowledged that the implied consent warning he read to Combs included the language that "[i]f you are convicted of KRS [Kentucky Revised Statutes] 189A.010, your refusal will subject you to a mandatory minimum sentence which is twice as long as the mandatory minimum jail sentence that would be imposed if you submit to all requested tests." The implied consent warning was entered into evidence.

Combs testified very briefly. She testified that the officer read her the implied consent warning, which included a warning that if she failed to take the blood test she would be penalized and her mandatory minimum sentence would be doubled. Combs testified she consented to give blood based on the warning about increased penalties. Combs testified she did not remember stating that she had gotten out of a DUI before based on her seizures and denied having previous seizures while driving. She stated she believed she had a seizure when she hit the pedestrians.

Neither party made any argument at the suppression hearing. Instead, both parties agreed to submit briefs. The circuit court ordered the parties to simultaneously submit briefs by April 27, 2018, at 4 p.m. Combs did not submit her brief until May 1, 2018; the Commonwealth never submitted a brief but did submit proposed findings of fact and conclusions of law.[2]

On May 4, 2018, an order was entered granting the motion to suppress. As to Combs's testimony regarding her consent to give blood, the circuit court only found that "Combs testified that she was read the implied consent form

[2] Although the Commonwealth's proposed findings of fact and conclusions of law are not contained in the record, we are confident that they were submitted. The circuit court references that the Commonwealth's proposed findings of fact and conclusions of law were submitted in its order on the motion to suppress. Another mention is made in the Commonwealth's designation of record, which includes "Commonwealth Findings of Fact and Conclusions of Law, dated 4-27-2018" and "Thread of email between Commonwealth's Attorney, Circuit Court and defense attorney dated 4-21-2018 through 5-1-2018[.]" As to the email thread, the Commonwealth attached it to its designation of record as an exhibit as it was not contained in the record.

which included being advised that failure to give blood would result in penalties being enhanced and additional penalties." The circuit court's conclusions of law included summaries of what could constitute an exigent circumstance and determined that pursuant to *Birchfield v. North Dakota*, 136 S. Ct. 2160, 2186, 195 L. Ed. 2d 560 (2016), "motorists cannot be deemed to have consented to submit to a blood test on pain of committing a criminal offense." The circuit court concluded:

> [T]he Court cannot find that exigent circumstances existed because the accident occurred at approximately 1:00 and the Officer was at the emergency room with the Defendant at 1:35 p.m. There was no attempt to get a search warrant and no testimony presented as to why one could not have been obtained.

The Commonwealth appealed from this interlocutory order granting Combs's motion to suppress pursuant to KRS 22A.020(4). *Parker v. Commonwealth*, 440 S.W.3d 381, 383 (Ky. 2014).

Initially we address Combs's arguments regarding whether we should even address the Commonwealth's argument on the merits. Combs criticizes the Commonwealth for submitting a late brief[3] and argues that the brief which was submitted failed to follow CR 76.12(4) by failing to: contain an introduction, specifically reference the record, and state how the issue was preserved for review.

---

[3] Although the time for filing its brief elapsed before the Commonwealth filed a motion to extend the time for filing it, our Court granted the Commonwealth's motion and its late brief was

-6-

Combs is correct that the Commonwealth's brief fails to comply with CR 76.12(4)(c)(i) by failing to contain a separate introduction,[4] (iv) by failing to cite with specificity where items are contained in the record,[5] and (v) by failing to contain ample references to the record and not showing whether the issue was properly preserved.[6]

Although "[c]ompliance with CR 76.12 is mandatory[,]" noncompliance "is not automatically fatal[.]" *Smothers v. Baptist Hospital East*, 468 S.W.3d 878, 881-82 (Ky.App. 2015). We have discretion in deciding what the consequence of such failures shall be. CR 76.12(8)(a) provides that "[a] brief *may* be stricken for failure to comply with any substantial requirement of this Rule 76.12." (Emphasis added.) We may also dismiss the appeal pursuant to CR 73.02(2)(a) or apply other sanctions such as only reviewing for manifest injustice. *French v. French*, 581 S.W.3d 45, 49 (Ky.App. 2019).

---

accepted. Kentucky Rules of Civil Procedure (CR) 76.12(8)(b) provides that "[i]f the appellant's brief has not been filed within the time allowed, the appeal *may* be dismissed." (Emphasis added.) Clearly our Court declined to sanction the Commonwealth by dismissing its appeal and determined to consider this appeal on the merits. Therefore, the late filing of the Commonwealth's brief is irrelevant now.

[4] The information which should be included in a separate introduction was contained in the statement of the case.

[5] The Commonwealth generally referenced the indictment, the video of the hearing (without any time stamps), and the order granting the motion to suppress.

[6] The summary of the testimony in the argument section fails to contain any references to where in the video of the suppression hearing specific statements were made.

However, in this case where there is no dispute that Combs consented to the blood draw after receiving the implied consent warnings, the issue before us is strictly to be determined as a matter of law and specific citations to the record are of less importance. Therefore, we chose not to impose a sanction. However, we caution that non-compliance in another case could result in sanctions or even dismissal of the appeal. *See Koester v. Koester*, 569 S.W.3d 412 (Ky.App. 2019).

Combs also argues that we should decline to review the alleged error because the Commonwealth failed to preserve its argument that the results of the blood draw should not be suppressed because the Commonwealth never submitted a brief below and we may only review for palpable error.

Combs's preservation argument is not well taken. Although the Commonwealth failed to explain how it preserved its argument, a failure to comply with CR 76.12(4)(c)(v) does not render a properly preserved issue unpreserved. While the Commonwealth did not make an oral argument during the suppression hearing or file a brief explaining its opposition to the motion to suppress, it did submit proposed findings of fact and conclusions of law opposing suppression which adequately preserved its argument for review. Accordingly, it is appropriate to review the circuit court's grant of the motion to suppress on the merits.

> An appellate court's standard of review of the trial court's decision on a motion to suppress requires that we first determine whether the trial court's findings of fact are supported by substantial evidence. If they are, then

they are conclusive. Based on those findings of fact, we must then conduct a *de novo* review of the trial court's application of the law to those facts to determine whether its decision is correct as a matter of law.

*Commonwealth v. Neal*, 84 S.W.3d 920, 923 (Ky.App. 2002) (footnotes omitted).

The Commonwealth argues that Combs voluntarily consented to the blood test and so neither a warrant nor exigent circumstances was necessary to justify the blood draw. The facts are not in dispute that Combs consented to the blood draw after receiving appropriate warnings. It is well established that consent is a valid exception to the warrant requirement. *Commonwealth v. Erickson*, 132 S.W.3d 884, 887 (Ky.App. 2004). The only issue is whether Combs's receiving an accurate warning that our DUI law imposes mandatory minimum sentences on convicted defendants who refuse consent could render her consent involuntary.

In *Birchfield*, the United States Supreme Court examined whether "laws that . . . make it a crime for a motorist to refuse to be tested after being lawfully arrested for driving while impaired . . . violate the Fourth Amendment's prohibition against unreasonable searches." *Birchfield*, 136 S. Ct. at 2166-67. Its holding that "motorists cannot be deemed to have consented to submit to a blood test on pain of committing a criminal offense" was necessarily addressed to the laws before it which made refusal a separate crime. *Id.* at 2186. As applied to petitioner Beylund, who consented to a blood test after being advised that his refusal would constitute a crime, the Court explained that because his blood test

-9-

could not be compelled incident to arrest, whether his consent was voluntary needed to be evaluated under the totality of the circumstances. *Id.*

Kentucky does not have a separate crime for refusing to consent to a blood test, making our law distinguishable from the North Dakota and Minnesota laws at issue in *Birchfield*. Instead, in Kentucky pursuant to KRS 189A.010(11)(e), "[r]efusing to submit to any test or tests of one's blood, breath, or urine requested by an officer having reasonable grounds to believe the person was operating or in physical control of a motor vehicle in violation of subsection (1) of this section," which prohibits operating a motor vehicle while impaired by alcohol or drugs, constitutes an aggravating circumstance which doubles the mandatory minimum sentence a defendant who is convicted for DUI will receive as set out in KRS 189A.010(5)(a)-(d). KRS 189A.105(2)(a) specifies the information which shall be given to the person from whom a test is requested and provides warnings about the consequences of refusing or submitting to a test, which includes the doubling of mandatory minimum sentences for refusing consent.

In *Commonwealth v. Brown*, 560 S.W.3d 873 (Ky.App. 2018), which was decided after the circuit court's ruling below, our Court considered whether warnings about enhanced penalties for a DUI conviction could vitiate consent. After examining *Birchfield*, our Court noted that "[i]t is the use of new criminal

-10-

charges to strong-arm an accused into consent for a blood test which the Supreme Court found so repugnant." *Id.* at 878. Our Court explained how Kentucky's statutory scheme differs from the ones at issue in *Birchfield* and, therefore, why the Supreme Court's reasoning did not apply to invalidate an otherwise voluntary consent:

> [T]he doubling of a mandatory minimum jail sentence is unquestionably a criminal sanction. Yet, that sanction is contingent on conviction on the underlying charge. . . . It lacks the coercive force of mandating the accused undergo an intrusive test or else accrue an additional criminal charge. Indeed, if a defendant . . . is not convicted on an aggravated DUI charge, the sanction does not even apply.

*Id.*

We note that Kentucky is not alone in such an interpretation. Our sister court in Maine rendered a decision consistent with the reasoning in *Brown*, holding "when probable cause exists, a warrantless blood test is not unreasonable when a driver has consented to testing after being warned that the lower limit of a court's sentencing range will increase if the driver refuses to submit to testing and is ultimately convicted of [DUI]." *State v. LeMeunier-Fitzgerald*, 2018 ME 85, ¶ 31, 188 A.3d 183, 193 (2018), *cert. denied* 139 S. Ct. 917, 202 L. Ed. 2d 648 (2019).

The circuit court made no finding as to whether Combs's consent was a result of being warned about the doubling of mandatory minimum sentences if

she refused consent, apparently assuming *Birchfield* foreclosed any consent to a blood draw after the implied consent warnings were read from ever being voluntary. It appears that the circuit court believed that the Commonwealth was required to either obtain a warrant or establish exigent circumstances in order to lawfully collect and test Combs's blood and, in the absence of either, believed that suppression of the analysis of her blood was required as a matter of law.

While such an analysis of *Birchfield* is possible, the decision in *Brown* foreclosed such an interpretation relative to our laws in Kentucky. We are bound by *Brown* no matter where our sympathies may lie. Therefore, the circuit court erred as a matter of law in its decision to suppress the results of a consensual blood draw on its reasoning below and we must reverse. However, on remand the circuit court may consider whether there are any other avenues of legal reasoning that may permit suppression.

Accordingly, we reverse as the Perry Circuit Court erred as a matter of law in granting Combs's motion to suppress her blood test based on her consent being involuntary and remand for a new hearing.

ALL CONCUR.

BRIEF FOR APPELLANT:                    BRIEF FOR APPELLEE:

Andy Beshear                            Steven Nathan Goens
Attorney General of Kentucky            Assistant Public Advocate
                                        Department of Public Advocacy
John Hansen                             Frankfort, Kentucky
Special Assistant Attorney General
Hazard, Kentucky