RENDERED:  NOVEMBER 19, 2021; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2018-CA-0840-MR

COMMONWEALTH OF KENTUCKY                                   APPELLANT

ON REMAND FROM KENTUCKY SUPREME COURT
(FILE NO. 2020-SC-0560-D)

APPEAL FROM PERRY CIRCUIT COURT
v.        HONORABLE ALISON C. WELLS, JUDGE
ACTION NO. 17-CR-00199

HOLLY COMBS                                                APPELLEE

OPINION
VACATING AND REMANDING

** ** ** ** **

BEFORE:  COMBS, JONES, AND K. THOMPSON, JUDGES.

THOMPSON, K., JUDGE:  This case is again before this Court upon remand from

the Kentucky Supreme Court for further consideration in light of its decision in

*Commonwealth v. McCarthy*, 628 S.W.3d 18 (Ky. 2021).

The Commonwealth appealed the Perry Circuit Court's interlocutory order granting Holly Combs's motion to suppress her blood test following her arrest for DUI on the basis that the circuit court erred in granting her motion because Combs validly offered her consent after being read the implied consent warnings. Initially, in our previous opinion, *Commonwealth v. Combs*, No. 2018-CA-0840-MR, 2020 WL 6370497 (Ky.App. Oct. 30, 2020) (unpublished), we reversed and remanded on the basis that Combs's consent was valid pursuant to *Commonwealth v. Brown*, 560 S.W.3d 873 (Ky.App. 2018), which had distinguished *Birchfield v. North Dakota*, 136 S.Ct. 2160, 195 L.Ed.2d 560 (2016). We now vacate and remand.

On August 6, 2017, Combs hit two pedestrians with her car while they were walking through a crosswalk in front of a Walmart entrance in Hazard, Kentucky. After her arrest, police read Combs the implied consent warnings, which included the information that if she refused consent and was convicted of DUI, her mandatory minimum sentence would be doubled. Combs consented to the blood draw and the results of her blood test were incriminating.[1]

---

[1] The toxicology report was not introduced into the record. The Commonwealth submitted it in response to a motion to show cause why the case should not be dismissed for lack of jurisdiction, arguing the suppressed results were vital to its case. The toxicology report itself, beyond the fact that it was incriminating, is not relevant on appeal.

On October 9, 2017, Combs was indicted for one count of first-offense driving under the influence, three counts of first-degree wanton endangerment, one count of no registration plates, one count of no insurance, one count of first-degree possession of a controlled substance, two counts of second-degree assault, one count of prescription drugs not in the proper container, and one count of being a second-degree persistent felony offender. Combs filed a motion to suppress the results of her blood test, arguing "the taking of the blood test through coercion of the implied consent warning without a search warrant is unconstitutional" and "the implied consent law is unconstitutional[.]"

At the suppression hearing held on April 23, 2018, Officer John Holbrook testified for the Commonwealth and Combs testified for the defense. Officer Holbrook testified that when he was investigating what happened, Combs volunteered to him that she takes Suboxone and Keppra for seizures. Officer Holbrook administered field sobriety tests and recognized many signs of intoxication, the specifics of which he testified to, before arresting Combs for DUI. Officer Holbrook testified that in a search of Combs's purse incident to arrest, he found a prescription bottle for Buprenorphine which contained five and a half pills of Buprenorphine and two Xanax bars.

Officer Holbrook testified there was no odor of alcohol on Combs or her vehicle and based on all of the circumstances, he believed Combs was impaired

by drugs or medication and determined that a blood test would be needed to determine what substances were causing her impairment. Therefore, he took Combs to Hazard Appalachian Regional Hospital (ARH) for a blood draw. According to Officer Holbrook, while at ARH Combs told him that she had gotten out of such charges before because she has seizures.

Officer Holbrook testified he read Combs the implied consent warnings. After she tried and failed to reach an attorney, Combs consented to a blood draw and signed paperwork at ARH. Officer Holbrook testified that the blood draw was performed but he did not know the results of the blood test.

Officer Holbrook testified that after the blood draw he took Combs to the Kentucky River Regional Jail (KRRJ). Before taking her inside, he asked Combs if she had any illegal substances on her and warned her that taking such substances inside would be a felony; Combs denied having any illegal substances. Officer Holbrook testified that while they were in the entrance of KRRJ, he noticed a substance sticking out of Combs's sock which he seized; the substance was later determined to be methamphetamine. According to Officer Holbrook, Combs told him that she was taking the drug to her boyfriend at KRRJ.

Officer Holbrook testified he reviewed surveillance video from Walmart and saw Combs's car drive through the Walmart crosswalk, which was occupied by five people. Combs made no attempt to stop and hit two people while

-4-

the others jumped back. He testified the injured pedestrians were sisters, an eleven-year-old and an eighteen-year-old.

Officer Holbrook acknowledged that in the police report, which he prepared approximately two days after the accident, he did not mention Combs's statements that she had beaten such charges before or that she was taking the methamphetamine to her boyfriend at the jail. He also acknowledged that the implied consent warning he read to Combs included the language that "[i]f you are convicted of KRS [Kentucky Revised Statutes] 189A.010, your refusal will subject you to a mandatory minimum sentence which is twice as long as the mandatory minimum jail sentence that would be imposed if you submit to all requested tests." The implied consent warning was entered into evidence.

Combs testified very briefly. She testified that the officer read her the implied consent warning, which included a warning that if she failed to take the blood test she would be penalized, and her mandatory minimum sentence would be doubled. Combs testified she consented to give blood based on the warning about increased penalties. Combs testified she did not remember stating that she had gotten out of a DUI before based on her seizures and denied having previous seizures while driving. She stated she believed she had a seizure when she hit the pedestrians.

Neither party made any argument at the suppression hearing. Instead, both parties agreed to submit briefs. The circuit court ordered the parties to simultaneously submit briefs by April 27, 2018, at 4:00 p.m. Combs did not submit her brief until May 1, 2018; the Commonwealth never submitted a brief, instead timely submitting proposed findings of fact and conclusions of law.[2]

On May 4, 2018, an order was entered granting the motion to suppress. As to Combs's testimony regarding her consent to give blood, the circuit court only found that "Combs testified that she was read the implied consent form which included being advised that failure to give blood would result in penalties being enhanced and additional penalties." The circuit court's conclusions of law included summaries of what could constitute an exigent circumstance and determined that pursuant to *Birchfield*, 136 S.Ct. at 2186, "motorists cannot be deemed to have consented to submit to a blood test on pain of committing a criminal offense." The circuit court concluded:

> [T]he Court cannot find that exigent circumstances existed because the accident occurred at approximately 1:00 and the Officer was at the emergency room with the Defendant at 1:35 p.m. There was no attempt to get a

---

[2] Although the Commonwealth's proposed findings of fact and conclusions of law are not contained in the record, we are confident that they were submitted. The circuit court references that the Commonwealth's proposed findings of fact and conclusions of law were submitted in its order on the motion to suppress. Another mention is made in the Commonwealth's designation of record, which includes "Commonwealth Findings of Fact and Conclusions of Law, dated 4-27-2018" and "Thread of email between Commonwealth's Attorney, Circuit Court and defense attorney dated 4-21-2018 through 5-1-2018[.]" As to the email thread, the Commonwealth attached it to its designation of record as an exhibit as it was not contained in the record.

search warrant and no testimony presented as to why one could not have been obtained.

The circuit court made no finding as to whether Combs's consent was a result of being warned about the doubling of mandatory minimum sentences if she refused consent.

The Commonwealth appeals from this interlocutory order granting Combs's motion to suppress pursuant to KRS 22A.020(4). *See Parker v. Commonwealth*, 440 S.W.3d 381, 383 (Ky. 2014) (explaining the Commonwealth has a statutory right to appeal such orders).

Initially we address Combs's arguments regarding whether we should even address the Commonwealth's argument on the merits. Combs criticizes the Commonwealth for submitting a late brief, arguing it should have been dismissed pursuant to Kentucky Rules of Civil Procedure (CR) 76.12(8)(b),[3] and argues that the brief which was submitted failed to follow CR 76.12(4). Combs is correct that the Commonwealth's brief fails to comply with CR 76.12(4)(c)(i) by failing to contain a separate introduction,[4] (iv) by failing to cite with specificity where items

---

[3] Although the time for filing its brief elapsed before the Commonwealth filed a motion to extend the time for filing it, our Court granted the Commonwealth's motion and its late brief was accepted. CR 76.12(8)(b) provides that "[i]f the appellant's brief has not been filed within the time allowed, the appeal *may* be dismissed." (Emphasis added.) Clearly our Court declined to sanction the Commonwealth by dismissing its appeal and determined to consider this appeal on the merits. Therefore, the late filing of the Commonwealth's brief is irrelevant now.

[4] The information which should be included in a separate introduction was contained in the statement of the case.

are contained in the record,[5] and (v) by failing to contain ample references to the record and not showing whether the issue was properly preserved.[6]

Although "[c]ompliance with CR 76.12 is mandatory[,]" "noncompliance . . . is not automatically fatal[.]" *Smothers v. Baptist Hospital East*, 468 S.W.3d 878, 881-82 (Ky.App. 2015). We have discretion in deciding what the consequence of such failures shall be. CR 76.12(8)(a) provides that "[a] brief *may* be stricken for failure to comply with any substantial requirement of this Rule 76.12." (emphasis added). We may also dismiss the appeal pursuant to CR 73.02(2)(a) or apply other sanctions such as only reviewing for manifest injustice. *French v. French*, 581 S.W.3d 45, 49 (Ky.App. 2019).

However, in this case where there is no dispute that Combs consented to the blood draw after receiving the implied consent warnings, the issue before us is strictly to be determined as a matter of law and specific citations to the record are of less importance. Therefore, we choose not to impose a sanction. However, we caution that noncompliance in another case could result in sanctions or even dismissal of the appeal. *See Koester v. Koester*, 569 S.W.3d 412 (Ky.App. 2019).

---

[5] The Commonwealth generally referenced the indictment, the video of the hearing (without any time stamps), and the order granting the motion to suppress.

[6] The summary of the testimony in the argument section fails to contain any references to where in the video of the suppression hearing specific statements were made.

Combs also argues that we should decline to review the alleged error because the Commonwealth failed to preserve its argument that the results of the blood draw should not be suppressed because the Commonwealth never submitted a brief below and we may only review for palpable error.

Combs's preservation argument is not well taken. Although the Commonwealth failed to explain how it preserved its argument, a failure to comply with CR 76.12(4)(c)(v) does not mean an argument is unpreserved. From our review of the record, we are satisfied the Commonwealth's argument was preserved. While the Commonwealth did not make an oral argument during the suppression hearing or file a brief explaining its opposition to the motion to suppress, it did submit proposed findings of fact and conclusions of law opposing suppression which adequately preserved its argument for review. Accordingly, it is appropriate to review the circuit court's grant of the motion to suppress on the merits.

We review a trial court's decision on a motion to suppress as follows:

> [W]e first determine whether the trial court's findings of fact are supported by substantial evidence. If they are, then they are conclusive. Based on those findings of fact, we must then conduct a *de novo* review of the trial court's application of the law to those facts to determine whether its decision is correct as a matter of law.

*Commonwealth v. Neal*, 84 S.W.3d 920, 923 (Ky.App. 2002) (citations omitted).

The Commonwealth argues that Combs voluntarily consented to the blood test and so neither a warrant nor exigent circumstances were necessary to justify the blood draw.

It is well established that consent is a valid exception to the warrant requirement. *Schneckloth v. Bustamonte*, 412 U.S. 218, 219, 93 S.Ct. 2041, 2043-44, 36 L.Ed.2d 854 (1973). As noted in *McCarthy*, warrantless blood tests in the absence of exigent circumstances constitute an unreasonable search "unless valid consent is given[.]" *McCarthy*, 628 S.W.3d at 22. The only issue is whether Combs's receiving a warning that our DUI law imposes mandatory minimum sentences on convicted defendants who refuse consent could and did render her subsequent consent involuntary.

In *Birchfield*, the United States Supreme Court examined whether "laws that . . . make it a crime for a motorist to refuse to be tested after being lawfully arrested for driving while impaired . . . violate the Fourth Amendment's prohibition against unreasonable searches." *Birchfield*, 136 S.Ct. at 2166-67. The Court examined three situations where defendants were warned their refusal to consent to testing constituted a separate crime. Birchfield refused consent for blood testing and conditionally pled guilty to an additional crime for refusal, and Bernard refused consent for a breath test and was charged with an additional crime. *Id.* at 2170-71. Beylund consented to blood testing after receiving the warning and

-10-

his test results caused him to receive a two-year administrative suspension of his license. *Id.* at 2172.

The Court held "motorists cannot be deemed to have consented to submit to a blood test on pain of committing a criminal offense." *Id.* at 2186. Therefore, Birchfield's additional conviction had to be reversed because "he was threatened with an unlawful search" while Bernard had no right to refuse a warrantless breath test incident to arrest for DUI. *Id.* As for Beylund's license suspension, the Court explained that because his blood test could not be compelled incident to arrest, whether his consent was voluntary given an inaccurate warning needed to be evaluated under the totality of the circumstances. *Id.*

The laws being reviewed in *Birchfield* penalized motorists for refusing consent through separate crimes. Therefore, states with laws with different statutory schemes where refusal changed the penalty for DUI had a basis for distinguishing the holding of *Birchfield* if they so desired (and as some have done).

Kentucky does not have a separate crime for refusing to consent to a blood test. Instead, in Kentucky pursuant to KRS 189A.010(11)(e), "[r]efusing to submit to any test or tests of one's blood, breath, or urine requested by an officer having reasonable grounds to believe the person was operating or in physical control of a motor vehicle in violation of subsection (1) of this section," which

-11-

prohibits operating a motor vehicle while impaired by alcohol or drugs, constitutes an aggravating circumstance which doubles the mandatory minimum sentence a defendant who is convicted for DUI, other than a first offense, will receive as set out in KRS 189A.010(5)(b)-(d). KRS 189A.105(2)(a) specifies the information which shall be given to the person from whom a test is requested and provides warnings about the consequences of refusing or submitting to a test, which includes the doubling of mandatory minimum sentences for refusing consent.[7]

In *Brown*, 560 S.W.3d 873, which was decided after the circuit court's ruling below, our Court considered whether warnings about enhanced penalties for a DUI conviction could vitiate consent. As summarized in *McCarthy*, the *Brown* decision distinguished our statutory scheme from that found repugnant in *Birchfield* when it "concluded that mandating that an accused undergo an intrusive blood test or else accrue a criminal charge was coercive while simply increasing the mandatory minimum jail sentence upon any eventual conviction of DUI was not." *McCarthy*, 628 S.W.3.d at 33.

---

[7] Oddly enough, while KRS 189A.010(11)(e), when combined with (5)(b)-(d) would result in a doubling of mandatory minimum sentences for the aggravator of refusing a blood test for the second, third, and fourth offenses within a ten-year period, KRS 189A.105(2)(a)1.b.i only requires warnings as to the doubling of the mandatory minimums for the second and third offenses within a ten-year period. However, the implied consent warning that officers typically give does not specify for which convicted offenses the mandatory doubling minimum sentences would apply.

While not specifically overruling *Brown*, the Court in *McCarthy* concluded this interpretation was erroneous, explaining:

> KRS 189A.105 imposes an unauthorized penalty on a motorist's refusal to submit to a warrantless blood test. That the penalty does not apply until after the defendant is convicted of DUI does not lessen its punitive nature nor does the fact that the mandatory doubled minimum sentence is within the range of potential penalties even for a person who does consent to a blood test.

*McCarthy*, 628 S.W.3d at 33. The Court noted that a reasonable person would recognize from the warning that refusing blood testing subjects such person to a higher minimum penalty "that would not apply otherwise" and held "that result is not allowed under *Birchfield*." *Id.* The Court concluded that the trial court was correct in ruling that "McCarthy could not be subjected to an enhanced penalty due to his refusal to submit to a warrantless Fourth Amendment search in the form of a blood test." *Id.* at 34.

*McCarthy* thus voids the doubling of mandatory minimum jail sentences resulting from the aggravated circumstance of refusing a blood test as set out in KRS 189A.010(11)(e), essentially excising the word "blood" from this section while allowing such penalties to apply to the refusal of breath or urine tests. This thereby makes the existing warnings mandated by KRS 189A.105(2)(a)1.b.i.,

inaccurate insomuch as they state that refusal to consent to a blood draw will result in doubled mandatory minimum sentences if a defendant is convicted pursuant to KRS 189A.010.

It is apparent that the several statutes that speak of blood testing or testing in general pursuant to implied consent, insofar as they enhance a criminal penalty, have also been altered by *McCarthy*. *See* KRS 189A.005(9); KRS 189A.103(1); KRS 189A.104(1)(b).

*McCarthy* dealt with a refusal and, so, did not address the situation of whether suppression can be warranted based on the coercive and now incorrect implied consent warning about the imposition of enhanced penalties for refusing warrantless blood testing where there are reasonable grounds to suspect a DUI has been committed. However, because *McCarthy* holds that *Birchfield* applies to void our enhanced DUI mandatory minimum sentences for refusing to consent to a blood draw, we look to *Birchfield* to resolve this issue.

As noted *supra*, one of the parties in the consolidated *Birchfield* cases was Beylund, who consented to a blood test after being advised that his refusal would constitute a crime. Beylund appealed not from a DUI conviction, but from his enhanced license suspension which was the result of his high blood alcohol level. The United States Supreme Court vacated Beylund's administrative two-year license suspension and remanded for an assessment of the voluntariness of his

-14-

consent under the totality of the circumstances "given the partial inaccuracy of the officer's advisory." *Birchfield*, 136 S.Ct. at 2186-87 (footnote omitted).

Accordingly, we vacate and remand for the Perry Circuit Court to consider and make a finding as to whether Combs's express consent was voluntary under the totality of the circumstances which included an inaccurate warning pursuant to KRS 189A.105 that her refusal would subject her to enhanced mandatory minimum penalties under KRS 189A.010.

JONES, JUDGE, CONCURS.

COMBS, JUDGE, CONCURS IN RESULT ONLY.

BRIEF FOR APPELLANT:

Andy Beshear
Attorney General of Kentucky
(Former)

John Hansen
Special Assistant Attorney General
Hazard, Kentucky

BRIEF FOR APPELLEE:

Steven Nathan Goens
Frankfort, Kentucky